2002 ME 127

**ST. FRANCIS DE SALES FEDERAL CREDIT UNION et al.**

v.

**SUN INSURANCE COMPANY OF NEW YORK et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 10, 2002.
Decided: Aug. 2, 2002.
Reargued: Nov. 13, 2002.
Opinion withdrawn and revised opinion issued: April 2, 2003.

Richard H. Broderick, Jr. (orally), Lincoln, for the plaintiffs.

Robert W. Harrington (orally), Boston, MA, for the defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Sun Insurance Company of New York[1] (n/k/a Chubb Indemnity Insurance

---

**1.** William H. McGee & Company, Inc., an underwriting firm that managed the operations of Sun, is a defendant as well, and also appeals. This opinion refers to both defendants as Sun.

Company) appeals from the denial of its motion for judgments as a matter of law following the entry in the Superior Court (Kennebec County, *Marden, J.*) of judgments against it in favor of the plaintiffs, St. Francis De Sales Federal Credit Union, Winslow Community Federal Credit Union, Taconnet Federal Credit Union, Notre Dame Federal Credit Union, and Keyes Fibre Federal Credit Union (collectively, the "Credit Unions"). The judgments are for compensatory damages awarded by a jury to the Credit Unions for fraud and misrepresentation flowing from certificates of insurance issued by Sun. Sun contends that: (1) the Credit Unions failed to establish the elements of fraud by clear and convincing evidence; (2) the court erred in refusing to admit evidence of the existence of other insurance covering the losses suffered by the Credit Unions; and (3) the court improperly restricted evidence proffered by Sun to challenge the claims by the Credit Unions that they relied on the certificates of insurance issued by Sun.

[¶ 2] The Credit Unions have also appealed from the court's entry of M.R. Civ. P. 50(b) judgments as a matter of law in favor of Sun, vacating jury awards of punitive damages to the Credit Unions arising out of the fraud and misrepresentation. The Credit Unions contend that the evidence fully supports the jury's finding that Sun's conduct was sufficiently egregious to warrant the imposition of punitive damages. We discern no error in the entry of judgments as a matter of law in favor of Sun on the punitive damages claims, but because the Superior Court improperly restricted evidence proffered by Sun on the issue of whether the Credit Unions reasonably relied on Sun's certificates of insurance, we vacate the compensatory damages judgments and remand to the Superior Court.

[¶ 3] The evidence admitted at trial established the following facts: As part of their daily business operations, each Credit Union collected restrictively endorsed checks. The Credit Unions contracted with Maine Armored Car to transport those checks to Lewiston for processing. Pursuant to that agreement, Maine Armored Car installed and maintained a locked metal box that was bolted to an exterior wall of the St. Francis De Sales Federal Credit Union building. At the end of each business day, the Credit Unions deposited the checks into the metal box, and Maine Armored Car picked up the checks and delivered them in Lewiston.

[¶ 4] The agreement required Maine Armored Car to carry insurance against the loss of Credit Union property. To meet this requirement, Maine Armored Car purchased an armored-car-transportation-insurance policy through Sun. The policy contained the following provision:

9. Where the Assured [Maine Armored Car] makes contracts providing that this Assured will call at the premises of a customer and open a safe/ATM thereon, either alone or in cooperation with the customer or his representative, it is understood and agreed that any liability of this Assured for any loss of Property which may occur under any such contract shall be covered by the Policy of Insurance but only from the moment that this Assured actually enters the premises and/or ATM location of the customer for the purpose of opening any such safe/ATM.

It is further understood and agreed that *the liability of this Assured for Property awaiting transportation by the Assured or otherwise and contained in a safe or safes* or ATMs located on the premises and/or ATM location of a customer or customers for which safe or safes or ATMs this Assured has agreed

to carry a master key, dial rim lock key, guard key or combination *shall be insured hereunder but only in the event such loss is caused by a person or persons gaining unlawful access to such safe or safes or ATMs through use of a master key, dial rim lock key, guard key or combination and for an amount not exceeding $50,000 from any one safe/ ATM.* (Emphasis added.)

[¶ 5] Annually, at Maine Armored Car's request, Sun issued to each Credit Union a certificate of insurance to verify that Sun had issued a policy of insurance to Maine Armored Car for loss of property of its customers from any cause. The first paragraph in each of the certificates of insurance reads, in its entirety:

This certificate is furnished simply as a matter of convenience to its holder(s) and gives information as to the issuance of the below mentioned policy, and sets forth certain features of the coverage as stated in said policy as it stands as of the date of issue hereof. This Certificate confers no rights on the holder(s). Said Policy, which contains the full provisions of the contract and insurance granted thereby is subject to endorsement, alteration, transfer, assignment and cancellation without notice to the holder(s) of this Certificate.

[¶ 6] The certificates then described the coverage in the underlying policy as "[c]overing the liability assumed by [Maine Armored Car] for loss or damage, *from any cause whatsoever,* to property of customers, consisting of ... Checks, Drafts, Notes ... and all other Commercial Papers, and other Documents and Papers of value." (Emphasis added.) The certificates then listed a number of exclusions not relevant to this case, but did not mention any exclusions for theft. Sun issued

Certificates from August 1, 1991 to August 1, 1992.

[¶ 7] On May 22, 1992, an unknown thief forcefully broke into the lock box attached to the St. Francis Credit Union building and stole the checks. Maine Armored Car submitted a claim to Sun in connection with the theft. Because of the circumstances surrounding the theft from the lock box, i.e., access to the lock box was not gained through the "use of a master key, dial rim lock key, guard key or combination," Sun denied coverage for the loss.

[¶ 8] The Credit Unions sued Maine Armored Car over the lost checks and obtained judgments establishing Maine Armored Car's liability for their losses. *See St. Francis De Sales Fed. Credit Union v. Maine Armored Car & Maine Armored Car Ser., Inc.,* CV–93–596 (Me.Super.Ct., Ken.. Cty., Sept. 11, 1996) (Atwood, J.). St. Francis De Sales was awarded $30,351.50 in compensatory damages; Winslow was awarded $27,068.24; Taconnet $418.43; Notre Dame $1378; and, Keyes Fibre $1091.68. *Id.*

[¶ 9] The Credit Unions have not been able to recover any amount of their judgments against Maine Armored Car. They made demands on Sun to pay them proceeds from the insurance policy described in the certificates of insurance issued to them. After Sun denied coverage, the Credit Unions brought this action seeking to reach and apply the proceeds of the policy issued to Maine Armored Car. The Credit Unions also alleged that the representations made by Sun in the certificates of insurance were fraudulent and were relied on by the Credit Unions and, as a result, the Credit Unions should be awarded compensatory and punitive damages. The Superior Court (*Atwood, J.*) entered summary judgments in favor of Sun on the "reach and apply" counts,[2] but denied sum-

---

**2.** Those summary judgments are not challenged.

mary judgments with respect to the fraud claims, which were the subject of the trial in this case.

[¶ 10] Each of the Credit Unions collected from their own insurance companies under policies that covered their losses from the theft of the checks. Relying on the collateral source doctrine, *see Werner v. Lane*, 393 A.2d 1329 (Me.1978), the Credit Unions moved *in limine* prior to trial to bar the admission of evidence about those payments and those policies of insurance. In its memorandum filed in opposition to the motion *in limine,* Sun argued, *inter alia,* that evidence that the Credit Unions had their own insurance was relevant to impeach the Credit Unions' claims that they relied on the certificates of insurance.[3] In particular, Sun requested that the jury be allowed to consider certain statements, signed under oath by each of the Credit Unions, submitted with and as part of proof of loss forms to their own insurers to recover for the stolen checks. These statements explicitly asserted, or clearly reflected, that the Credit Unions had no other insurance covering the loss of the checks from the lock box. The Superior Court conditionally granted the *in limine* motion to exclude the evidence, reserving the right to reconsider at trial.

[¶ 11] At trial, Sun made an offer of proof that each Credit Union was fully insured against the theft from the lock box, and that each Credit Union had stated to its own insurer that no other insurance covered the loss of the checks. The trial court concluded that the sworn statements in the proof of loss forms were admissible "on the issue of general credibility of the reliance upon the certificate[s] of insurance." The court, however, severely restricted Sun's use of that evidence. Specifically, the court allowed Sun to inquire only about the bare statements on the proof of loss forms, required all other language on the forms to be redacted, and ruled that Sun could not inform the jury that the Credit Unions' statements existed as part of proof of loss submitted to their own insurers.

[¶ 12] Sun attempted to use one of the sworn statements during its cross-examination of the president of St. Francis. The proof of loss form, however, on which the statement had been made, was so thoroughly redacted, and its use so restricted, that the lack of context severely limited its potential effectiveness, and Sun thereafter made no further use of the Credit Unions' signed statements.

[¶ 13] The jury returned a verdict in favor of the Credit Unions and awarded to each of them, as compensatory damages, the same amount as the judgment that had been entered against Maine Armored Car. The jury also awarded $125,000 in punitive damages against Sun, $25,000 to each Credit Union.

[¶ 14] Sun moved for judgments as a matter of law at the appropriate times throughout the proceedings. *See* M.R. Civ. P. 50(a). The trial court deferred ruling on the motions until after the jury returned its verdict. *See Currier v. Toys 'R' Us, Inc.,* 680 A.2d 453, 455 (Me.1996) ("[I]t is the better practice to avoid the possibility of a second trial by submitting the case to the jury."). The court denied Sun's motions for judgments as matter of law on the claims for fraud and misrepresentation, but entered judgments for Sun on the punitive damages claims pursuant to M.R. Civ. P. 50(b). These appeals followed.

---

**3.** Sun also argued that the evidence that the Credit Unions carried other insurance was relevant and admissible on the issues of causation and punitive damages.

## I. CREDIT UNIONS' APPEAL

[¶ 15] The Credit Unions appeal the trial court's post verdict entry of a judgment for Sun on the punitive damages claims. In reviewing a trial court's grant of a Rule 50(b) motion for a judgment as a matter of law, "we examine the jury's verdict to 'determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury verdict.'" *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 6, 724 A.2d 1248, 1250 (quoting *Townsend v. Chute Chem. Co.*, 1997 ME 46, ¶ 8, 691 A.2d 199, 202).

[¶ 16] "[I]n order to recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant acted with malice." *Tuttle v. Raymond*, 494 A.2d 1353, 1354 (Me.1985). Malice can be express or implied. *Id.* at 1361. Express malice exists when "the defendant's tortious conduct is motivated by ill will toward the plaintiff." *Id.* Implied malice arises when "deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied." *Id.* Implied malice, however, is not established "by the defendant's mere reckless disregard of the circumstances." *Id.*

[¶ 17] There is no evidence of express malice and, even viewing the evidence most favorably to the Credit Unions, Sun's conduct was not so outrageous that malice could be implied. Although the jury found that the certificates of insurance overstated the extent of the coverage, the documents were standard form certificates, used throughout the insurance industry, and supplied to insurance brokers who filled in the names of the parties and amounts of coverage and mailed them out. There was no knowing participation in a malicious scheme to defraud armored car customers. At best, the evidence shows that Sun was reckless in drafting and issuing the certificates. The trial court properly entered judgments as a matter of law in favor of Sun on the punitive damages claims.

## II. SUN INSURANCE'S APPEAL

### A. Evidence of Other Insurance

[¶ 18] Sun contends that it should have been allowed to demonstrate that the Credit Unions were insured and had already been compensated by insurance for the losses claimed in this action. It argues that the proffered evidence established "mitigating factors that the jury should have been allowed to consider in evaluating its assessment of punitive damages," and that it was relevant to causation. Sun also asserts that the evidence was admissible on the issue of whether the Credit Unions' reliance on the misrepresentations in the certificates of insurance was reasonable.

[¶ 19] The Credit Unions contend that the existence of other insurance was properly excluded by the court pursuant to *Werner*, 393 A.2d at 1335. The Credit Unions also assert that Sun failed to adequately preserve the issue as to reliance and, moreover, that Sun failed to make use of the limited evidence pertaining to the statements made by the Credit Unions on the proofs of loss that the court did allow Sun to present.

[¶ 20] The collateral source doctrine provides that, "if a plaintiff is compensated in whole or in part for his damages by some source independent of the tortfeasor, he is still permitted to have a full recovery against [the tortfeasor]." *Werner*, 393 A.2d at 1335. "The premise underlying this rule is that either the injured party or the tortfeasor will receive a windfall if part of a loss is paid by an

independent source, and, as between the injured party and the tortfeasor, the injured party should reap the benefit of the windfall." *Potvin v. Seven Elms, Inc.,* 628 A.2d 115, 116 (Me.1993).

 [¶ 21] We agree with the Credit Unions that evidence of other insurance covering the same losses was not admissible on issues of causation and punitive damages. The trial court erred, however, in overly restricting Sun's use of the statements signed by the Credit Unions on proof of loss forms submitted to their own insurers shortly after the theft. The Credit Unions allege that Sun fraudulently issued certificates of insurance, which represented that Maine Armored Car had insurance policy coverage for thefts of the checks placed in the lock box, and as a necessary element of their fraud claims, that the Credit Unions relied on those certificates to their detriment. On the reliance issue, Sun should have been allowed to fully present the statements on the proofs of loss that were signed under oath by the Credit Unions and submitted to their own insurers. These statements affirmatively asserted, or clearly reflected, that no insurance, other than their own policies, existed to cover the loss from the May 22, 1992 theft of the checks from the lock box. Pursuant to the collateral source doctrine, the Credit Unions are not precluded from recovering against Sun for the value of the lost checks in this action for fraudulent misrepresentation. Nevertheless, such statements are relevant for the limited purpose of determining whether the asserted reliance by the Credit Unions on the certificates issued by Sun was reasonable.

 [¶ 22] The Credit Unions contend that Sun failed to preserve the issue of the admissibility of the proof of loss statements on the issue of relevance. Even if Sun preserved their reliance argument, the Credit Unions further assert that Sun

failed to take advantage of the limited use of the statements that the trial court allowed. An issue is raised and preserved if there was a "sufficient basis in the record to alert the court and any opposing party to the existence of that issue." *Chasse v. Mazerolle,* 580 A.2d 155, 156 (Me.1990).

 [¶ 23] In opposing the Credit Unions' pretrial motion *in limine* to exclude the evidence of the proofs of loss and the statements contained in them, Sun clearly and emphatically argued the relevance of that evidence to the issue of reliance. At trial, when the court reconsidered the *in limine* motion and the admissibility of the statements on the proofs of loss, Sun was less clear on the reasons for their admissibility, but the court expressly stated its awareness that the evidence went to the issue of reliance. Although the parties are responsible to direct the attention of the courts to the record, and to clearly state supporting reasons for objections, *see e.g.,* M.R. Evid. 103(a), Sun's arguments opposing the Credit Unions' motion *in limine* sufficiently preserved the admissibility of the statements of the proofs of loss as relevant to whether the Credit Unions relied on the certificates of insurance.

[¶ 24] Moreover, the strict limitations placed on that evidence by the trial court prevented Sun from making any effective use of those statements at trial to impeach the contentions of the Credit Unions that they reasonably relied on the certificates of insurance. For the statements on the proofs of loss to make sense, they must have a context, i.e., that they are statements appearing on proofs of loss submitted by the Credit Unions to their own insurers to recover for the *same* losses that the Credit Unions contend they relied on the certificates to cover. The fact that the Credit Unions had their own insurance covering the theft of the checks does not preclude their suit against Sun for fraud,

*see Werner,* 393 A.2d at 1335, and does not mean that the Credit Unions could not or did not reasonably rely on the certificates. Sun is entitled to test the reasonableness of that reliance, however, and the jury must be aware that the statements were made in conjunction with proofs of loss submitted to their own insurers.

B. Fraud Claims

[¶ 25] Although we vacate the compensatory damage awards, Sun contends that it is entitled to judgments as a matter of law on the Credit Unions' fraud claims because there is insufficient evidence of fraud. We review the trial court's denial of a motion for a judgment as a matter of law by examining the evidence in the light most favorable to the nonmoving party to determine whether any reasonable view of the evidence, including all justifiable inferences to be drawn therefrom, could sustain the verdict. *Guardianship of Hughes,* 1998 ME 186, ¶ 20, 715 A.2d 919, 924. "The burden is on the moving party to show that the adverse verdict is clearly and manifestly wrong." *Schiavi v. Goodwin,* 542 A.2d 367, 368 (Me.1988).

[¶ 26] A defendant is liable for fraud if the plaintiff establishes the following elements by clear and convincing evidence:

[The defendant] (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage.

*Letellier v. Small,* 400 A.2d 371, 376 (Me. 1979). When clear and convincing evidence is required, plaintiffs bear the burden of persuasion to "place in the ultimate factfinder an abiding conviction that the truth of [their] factual contentions are 'highly probable.'" *Taylor v. Comm'r of Mental Health & Mental Retardation,* 481 A.2d 139, 153 (Me.1984) (quoting *Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984)).

[¶ 27] Sun contends that the Credit Unions failed to prove false misrepresentation, justified reliance, and scienter. Sun also asserts that three of the Credit Unions failed in their proof of damages. We disagree.

[¶ 28] The certificates of insurance stated that Sun had issued a policy to Maine Armored Car, "[c]overing the liability assumed by [Maine Armored Car] for loss or damage, *from any cause whatsoever,* to property of customers, consisting of ... Checks, Drafts, Notes ... and all other Commercial Papers, and other Documents and Papers of value." (Emphasis added.) The certificates also listed exclusions from coverage but did not mention exclusions pertaining to theft. The actual *policies* issued by Sun to Maine Armored Car, however, did *not* cover losses "from any cause whatsoever." Rather, the policies did provide coverage for theft, but only thefts committed in a particular manner, and did not cover the kind of theft that occurred in this case. Thus, viewing the evidence in the light most favorable to the Credit Unions, a jury could conclude to a high probability that the representations in the certificates stating that Maine Armored Car was fully covered for losses from any cause whatsoever were false.

[¶ 29] A party "may justifiably rely on the fraudulent misrepresentation of [another] ... without investigating the truth or falsity of the representation. Reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to him." *Estate of Whitlock,* 615 A.2d 1173, 1176 (Me.1992); *see Ferrell v. Cox,* 617 A.2d 1003, 1006 (Me.

1992) (holding that an experienced attorney who conveyed a utility easement was justified in relying on the judge or attorney grantee's representations that the easement would not be shared with others).

 [¶ 30] Sun presented evidence that: (1) the Credit Unions are experienced in insurance-related matters and knew that the certificates of insurance clearly stated that they conferred no rights, that the certificates did not represent the full provisions of the insurance policy and did not claim to do so; (2) the certificates stated that the referenced policy could be canceled without notice to the holder; and (3) some of the Credit Unions may not have actually read the entire certificates. The Credit Unions, however, produced evidence to show that Sun issued the certificates for the purpose of causing the Credit Unions to believe that Maine Armored Car was insured for the loss of its customers property "from any cause whatsoever." Moreover, there was testimony from the Credit Unions that their employees did believe that the representations in the certificates were true, they relied upon the certificates in deciding to do business with Maine Armored Car, and they entrusted their property to Maine Armored Car only after reviewing the certificates.

 [¶ 31] In order to succeed in an action for fraud, a plaintiff must also prove that the defendant's false misrepresentation was made with knowledge of its falsity, or in reckless disregard of its accuracy. *Letellier*, 400 A.2d at 376. Sun wrote the insurance policies and subsequently issued the certificates of insurance through an insurance broker. The representations in the certificates that Maine Armored Car had insurance to cover its customer losses "from any cause whatsoever" were not mere casual comments or off-hand remarks; rather the representations contained formalized statements of fact concerning insurance coverage, complete with seals and signatures that conveyed credibility.

 [¶ 32] The certificates vary in several important respects from the language of the policies. Given the significance of these differences, and viewed in a light most favorable to the Credit Unions, a fact finder could reasonably infer that the representations contained in the certificates were made in reckless disregard of their truth or falsity.

 [¶ 33] Finally, plaintiffs must prove pecuniary loss. *Jourdain v. Dineen*, 527 A.2d 1304, 1307 (Me.1987). The Credit Unions satisfied this requirement by presenting evidence that they suffered losses when the checks were stolen and that they have aggressively, but unsuccessfully, attempted to execute judgments obtained against Maine Armored Car for the past three years. Thus, although the evidence would have supported a contrary verdict, when viewed in the light most favorable to the Credit Unions, a sufficient evidentiary basis exists to support the jury's finding that Sun was liable for fraud and misrepresentation. Accordingly, Sun is not entitled to judgments as a matter of law.

The entry is:

Judgments as a matter of law on punitive damages affirmed. Judgments awarding compensatory damages to the Credit Unions vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.