STATE OF MAINE
CUMBERLAND, ss.



2004 JUN 25 A 10: 19

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-02-72

LINDSAY KNAPP,

Petitioner

v.

MAINE WORKERS' COMPENSATION
BOARD,

DECISION AND ORDER

Defendant

and

MAINE EMPLOYERS' MUTUAL
INSURANCE COMPANY,

DONALD L. GARBRECHT
LAW LIBRARY

Party-In-Interest

JUL 19 2004

This matter is before the court on the appeal of the plaintiff from the decision of the State of Maine, Workers' Compensation Board (the "Board"), pursuant to M. R. Civ. P. 80C.

## BACKGROUND

On September 16, 1993, the petitioner, Lindsay A. Knapp, within her first week of employment as a chef at Fred's Emporium, suffered a work-related injury when she fell through an opening in the kitchen floor. (R. Vol. III at 1219.) Fred's Emporium was owned by Robert Fortier and insured by Maine Employers' Mutual Insurance Company ("MEMIC"). (R. Vol. I. at 44.)

The Board heard the petitioner's case, and pursuant to a decree dated October 30, 1997, which was subsequently adjusted pursuant to a decree dated February 17, 1999, the petitioner was awarded compensation for time lost from work for a closed-end period of time. (R. Vol. I. at 44-47.) The 1997 decree

1

found the petitioner's average weekly wage to be $448.90, and it also ordered MEMIC to pay certain medical bills. (R. Vol. I at 49-50). However, the Board found that the petitioner had not met her burden of proof that she continued to be affected by the accident and determined that no further compensation would be due after the set closed-end period of time. (R. Vol. I at 46.) The petitioner appealed the 1997 decree to the Law Court pursuant to 39-A M.R.S.A. § 322; review of the appeal was denied. (R. Vol. I at 52.)

In a motion dated October 13, 1998, the petitioner alleged, *inter alia*, that that her former employer, Mr. Fortier, had lied about her average weekly wage during a June 11, 1996 hearing before the Board. (R. Vol. I at 10.) On January 4, 1999, this issue was referred to the Board's Abuse Investigation Unit (the "AIU"). (R. Vol. I at 6.) In her AIU position papers, the petitioner raised several additional issues. (R. Vol. I at 19-28 & 39-40.)

On February 28, 2001, the AIU sent a letter to the parties regarding its determination that pursuant to 39-A M.R.S.A. § 360(2), petitioner's complaints should be referred to a Hearing Officer for a Hearing. (R. Vol. I at 64.) Per MEMIC's request, the AIU clarified the issues that were being forwarded for hearing. (R. Vol. I at 103-104.)[1] The issue of whether MEMIC committed fraud

---

[1] The following issues were referred for hearing:
1) Whether the employer intentionally misrepresented the amount of the employee's pre-injury earnings;
2) Whether the employer intentionally misrepresented his reason or reasons for firing the employee;
3) Whether MEMIC's representative, Susan Hartnett intentionally misrepresented the amount of job counseling and vocational rehabilitation Ms. Knapp had received;
4) Whether MEMIC's agent, Betsy Audette, intentionally misrepresented to Ms. Knapp that MEMIC would pay her medical bills;
5) Whether MEMIC's and the employer's actions taken as a whole constitutes fraud meant to deprive Ms. Knapp of her benefits.
(R. Vol. I at 104.)

when it referred to an examination it had set up with Dr. Boucher under 39-A M.R.S.A. § 207 as an independent medical exam ("IME") was not originally referred for a hearing, but was later included after the petitioner requested its reconsideration by the AIU. (R. Vol. I at 104 & 119.)

On November 15, 2002, the Hearing Officer issued a decision denying all of the claims raised by the petitioner against MEMIC. (R. Vol. III at 1217-27.) Pursuant to 5 M.R.S.A. § 11002, the petitioner filed an appeal to this court requesting that the agency decision be reversed with respect to all counts with the exception of the count concerning the insurer's late payment of medical bills. (R. Vol. III at 1232.) In her brief, however, the petitioner raises additional issues not referred to or determined by the Hearing Officer, as well as elects not to directly appeal certain portions of the Hearing Officer's decision. (Pet. Br. at 1-2.)

## DECISION

In an 80C appeal, the court reviews the administrative record to determine whether the agency's findings are supported by any competent evidence, as well as whether the agency correctly applied the law to the particular facts of the case. *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551, 555. The court will not disturb an agency decision unless the record before it compels a contrary result. *Lewiston Daily Sun v. Unemployment Ins. Comm'n*, 1999 ME 90, ¶ 7, 733 A.2d 344, 346. The Board's findings of fact may be reversed on appeal if the court determines that they are unsupported by substantial evidence on the whole record. 5 M.R.S.A. § 11007(4)(C)(5) (2002).

3

"The court may not substitute its judgment for that of the agency merely because the evidence could give rise to more than one result." *Dodd v. Sec'y of State*, 526 A.2d 583, 584 (Me. 1987). In reviewing an agency decision, the issue before the court is not whether it would have reached the same conclusion as the agency, "but whether the record contains competent and substantial evidence that supports the result reached." *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261 (citation omitted). "The burden of proof rests with the party seeking to overturn the decision of an administrative agency." *Seider*, 2000 ME 206, ¶ 9, 762 A.2d at 555 (citation omitted); *see also Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 479 (Me. 1982). In cases where conflicting evidence is presented, the Law Court has repeatedly held that such conflicts are for the fact finder to resolve. *Bean v. Maine Unemployment Ins. Comm'n*, 485 A.2d 630, 634 (Me. 1984).

For the following reasons, the court finds that the petitioner has not met this burden of proof with respect to any of the issues that may be appealed in this action,[2] as well as finds that the Hearing Officer acted within her authority when she denied the petitioner's request for penalties against MEMIC.

Reference to 39-A M.R.S.A. § 207 as an IME

The petitioner alleges that the MEMIC committed fraud when it referred to an examination it had set up under 39-A M.R.S.A. § 207 as an IME, claiming that the reference to an IME was an attempt to mislead her into believing that an examination MEMIC scheduled with Dr. Boucher was a

---

[2] The court does not address any of the petitioner's claims not referred to the Hearing Officer, as these claims are not properly before the court on this 80C appeal. Nor

4

binding IME pursuant to 39-A M.R.S.A. § 312. To prove MEMIC's liability for fraud at the hearing below, the petitioner had the burden of establishing by clear and convincing evidence that MEMIC: (1) made a false representation; (2) of a material fact; (3) with knowledge of its falsity or with reckless disregard for whether it was true or false; (4) for the purpose of inducing the petitioner to act or refrain from acting in reliance upon it; and (5) the petitioner justifiably relied upon the representation as true and acted upon it to her detriment. *See St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of New York*, 2002 ME 127, ¶ 26, 818 A.2d 995, 1003.

The Hearing Officer's determination that this burden was not met is supported by substantial evidence in the record. First, several exhibits offered by the petitioner belie the petitioner's claim that a false representation was made by MEMIC, as these exhibits, although using the phrase "independent medical examination" clearly indicate to the petitioner that the examination was being scheduled pursuant to 39-A M.R.S.A. § 207. *See* R. Vol. II, Employee's Ex. 2 at 555; R. Vol. II, Employee's Ex. 5 at 558; R. Vol. II, Employee's Ex. 6 at 560; R. Vol. II, Employee's Ex. 7 at 562. In addition, the record contains evidence that contradicts the petitioner's claim that she believed that the exam would be a binding § 312 IME because she and MEMIC agreed on the doctor who would perform the exam, as well as evidence showing that the referral of the examining physician came from MEMIC alone and that the petitioner knew that the exam was performed at MEMIC's request. *See* R. Vol. II, Employee's Ex. 3 at 556; R. Vol. II, Employee's Ex. 8 at 563; R. Vol. II, Employee's Ex. 15 at 572-86; R. Vol. II at 689.

does it address the portions of the Hearing Officer's Decision not contested in the

The record also contains evidence that the petitioner did not rely on Dr. Bouchard's exam to her detriment. *See e.g.* R. Vol. II at 694 (where petitioner argues that the exam should be given full weight). Finally, as stated by the Hearing Officer, when MEMIC scheduled the petitioner's exam, the Board had not established a list of independent medical examiners as required by 39-A M.R.S.A. § 312(1). Hence, it would have been impossible for MEMIC and the petitioner to obtain an independent medical examination pursuant to § 312. (R. Vol. III at 1224.)

## Intentional Misrepresentation of Employer Regarding Pre-Injury Earnings

The petitioner claims that the Hearing Officer erred by not finding that her former employer intentionally misrepresented her salary in order to cause her to receive reduced benefits. The petitioner's former employer testified that while he did tell the petitioner that she could possibly make $27,000 a year, he also told her that such money could only be earned if she worked approximately fifty hours a week. *See* R. Vol. II at 838, lines 4-12. This testimony coupled with record evidence that the petitioner was paid an hourly wage and "never worked that many hours," *see* R. Vol. II at 918, provides adequate record support for the agency's decision.

The record also shows that the petitioner never established that MEMIC was attempting to cause her to receive reduced benefits. Although the petitioner believes that her average weekly wage should have been calculated by dividing $27,000 by fifty-two weeks, this method was not available to her, as she had not been employed for the requisite 200 days prior to her injury. *See* 39-A M.R.S.A. § 102(4)(A) (2001). Similarly, while the Board could have

---

petitioner's brief.

6

determined the petitioner's pre-injury earnings by the number of weeks worked, this would have resulted in a much lower average weekly wage because Ms. Knapp only had worked three days prior to her injury. *See* R. Vol. I at 290; *see also* 39-A M.R.S.A. § 102(4)(B) (2001). Accordingly, there is substantial evidence in the record to support the Hearing Officer's determination that the employer did not misrepresent the petitioner's pre-injury earnings in order to cause the petitioner to receive reduced benefits.

General Allegations of Fraud Against Employer and MEMIC

The petitioner asserts that the Hearing Officer wrongly decided the issue of whether the actions of MEMIC and her former employer, taken as a whole, constitute fraud meant to deprive the petitioner of her benefits. The Hearing Officer's determination reflects an accurate understanding of the law and is supported by her findings on the four other claims that were referred to her by the AIU.

First, as discussed above, based on significant evidence in the record, the Hearing Officer did not find any misrepresentation or fraud with respect to the petitioner's average weekly wage or the use of the phrase "independent medical examination."

In addition, the petitioner alleges that MEMIC knew she had been fired from her job but misrepresented this knowledge to petitioner so as to deny petitioner a remedy under 39-A M.R.S.A. § 218. However, the record shows that the Hearing Officer was justified in finding that the petitioner understood the nature of her separation from employment. R. Vol. II at 754, lines 7-16. Further, the Hearing Officer correctly concludes that regardless of whether the petitioner had been fired, she would not necessarily have had a remedy under §

7

218 unless she had requested reinstatement to her position and was denied reinstatement or reasonable accommodation. *See* 39-A M.R.S.A. § 218 (2001). The petitioner was free to request reinstatement and to seek relief under § 218 regardless of whether she was laid off or let go, *see id.*, and sought no such relief. Therefore, even if the petitioner was able to establish that MEMIC misrepresented the nature of her termination, which the court does not find, she cannot claim that she relied on the representation as true and acted on it to her detriment.

Similarly, the Hearing Officer's determination that MEMIC's representative did not intentionally misrepresent to the Board that she had received sixteen weeks of vocational rehabilitation is supported by the Hearing Officer's legal conclusion that job development is a form of employment rehabilitation under section 217. *See* 39-A M.R.S.A. § 217.

Finally, the Hearing Officer's determination that Ms. Audette, acting as an agent of MEMIC, did not intentionally misrepresented to Ms. Knapp that MEMIC would pay her bill was lawful and is supported by the record. While Ms. Audette did tell the petitioner that the insurer would pay her bills up to the date of the mediation, *see* R. Vol. III at 1041, the Hearing Officer correctly decided that the insurer's failure to meet the petitioner's demands or expectations regarding the time frame for paying these bills is not tantamount to fraud or misrepresentation. *See* R. Vol. III at 1223.

The court, like the Hearing Officer, takes notice of the fact that the AIU has previously levied a fine against the insurer for failure to pay interest on monies ordered by decree in 1999. *See* R. Vol. III at 1226. However, there is

substantial evidence in the record which would still allow the Hearing Officer to conclude that MEMIC's actions as a whole did not constitute fraud.

Authority of Hearing Officer

The petitioner's final argument is that the Board's AIU had already determined the legal issue of whether fraud had occurred and that the Hearing Officer's authority was limited to determining whether the facts alleged by the petitioner were true. The court disagrees. *See* 39-A M.R.S.A. § 360(2) (requiring a full hearing, before a Presiding Officer, of the merits of a claim alleging fraud and/or misrepresentation); *see also* W.C.B Rule Ch. 15, § 10 (giving the AIU an investigatory role and the Presiding Officer an adjudicatory role in hearings before an imposition of a penalty). An agency's interpretation of its own internal rules, regulations and procedures is given considerable deference. *Seider,* 2000 ME 206 ¶ 32, 762 A.2d at 561. It will not be set aside "unless the rule or regulation plainly compels a contrary result." *Id. (quoting Downeast Energy Corp., v. Fund Ins. Review Bd.,* 2000 ME 151, ¶ 13, 756 A.2d 948, 951).

## DECISION

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference and the entry shall be:

The decision of the Board is AFFIRMED.

Dated: June 25, 2004

_____
Justice, Superior Court

Date Filed ___12-16-02___ ___CUMBERLAND___ Docket No. ___AP-02-72___
                                County

Action _80C APPEAL_


LINSAY A. KNAPP                          WORKERS' COMPENSATION BOARD


                                   vs.

Plaintiff's Attorney                 | Defendant's Attorney (ME Employers Mutual
 Pro-Se                              | John Chapman Esq. Insurance Company)
 25 GRANITE STREET                   | PO BOX 168 Portland ME 04112
 PORTLAND, MAINE  04102              |
                                     | TIMOTHY COLLIER/JOHN C. ROHDE
                                     | ASSISTANT GENERAL COUNSEL
                                     | 27 STATE HOUSE STATION
                                     | AUGUSTA, MAINE  04333-0027