**ANN TAYLOR, INC., Appellant**

v.

**HERITAGE INSURANCE SERVICES, INC.; Insuramax, Inc.; and Fireman's Fund Insurance Company, Appellees.**

No. 2007–CA–000317–MR.

Court of Appeals of Kentucky.

July 11, 2008.

Rebecca Grady Jennings, Louisville, KY, for appellant.

Mary Elisabeth Naumann, Lexington, KY, for appellee, Heritage Insurance Services, Inc.

Christina L. Vessels, Lexington, KY, for appellee, Insuramax, Inc.

Norman E. Harned, W. Greg Harvey, Bowling Green, KY, for appellee, Fireman's Fund Insurance Company.

Before KELLER, MOORE and THOMPSON, Judges.

## OPINION

MOORE, Judge.

Ann Taylor, Incorporated, seeks review of Jefferson Circuit Court's grant of summary judgment to Heritage Insurance Services, Incorporated, Insuramax, Incorporated, and Fireman's Fund Insurance Company. Upon *de novo* review, we find no error and affirm.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ann Taylor and Interstate Motor Carrier, Incorporated (IMC)[1] entered into a Transportation Agreement dated February 18, 2000, which agreed that IMC would ship cargo from Ann Taylor's Louisville distribution center to other warehouse facilities. Regarding motor cargo coverage, the agreement provided that

(a) CARRIER [IMC] shall at all times during the term of this agreement have and maintain in full force and effect ... Cargo ... Insurance with reliable insurance companies acceptable to ANN TAYLOR, INC., and in the following amounts, which amounts may be modified by ANN TAYLOR, INC. subsequently on thirty days written notice: ... $1,000,000 Cargo per shipment; ... [2]

IMC obtained the coverage required by the agreement from Fireman's Fund. Heritage was the "agent of record" for the policy issued by Fireman's Fund to IMC, and Insuramax functioned as the broker.

On March 15, 2003, IMC was transporting a shipment of cargo for Ann Taylor via a tractor and trailer truck, which was driven by Richard Luce. Luce stopped for a break at an IMC authorized truck stop in Pennsylvania. While Luce was inside the truck stop, the truck containing the Ann Taylor cargo was stolen.[3]

Ann Taylor made a claim for the stolen cargo to IMC, which subsequently submitted the claim to its insurer, Fireman's Fund. Fireman's Fund issued a declination of coverage letter based on an exclusion in the policy for unattended vehicles. According to this exclusion, theft occurring while a cargo truck is unattended is not covered.

Ann Taylor contends that it requested a certificate of insurance (COI) to confirm the insurance coverage required in the transportation agreement with IMC. Heritage and Insuramax responded to this request by preparing a COI, naming Ann Taylor as a "certificate holder" and that the coverage applied only to Ann Taylor. The COI did not disclose the attended vehicle exclusion. According to Ann Taylor, it relied on the COI regarding coverage, yet coverage was denied for an exclusion not listed on the COI. Ann Taylor subsequently brought a cause of action against Fireman's Fund, Heritage and Insuramax[4] for negligent misrepresentation

---

1. IMC is not a party to the present appeal.

2. Later, Ann Taylor agreed to lower the limits of coverage for cargo liability to $750,000 per shipment.

3. Ann Taylor submitted a claim to its own insurer, American Home Assurance Compa-

ny, which paid Ann Taylor $1,651,668.37 for the stolen cargo and became subrogated to Ann Taylor's rights.

4. It is undisputed, however, that Ann Taylor was not the insured. Nor is it disputed that Ann Taylor was never a party to the contract between IMC and Fireman's Fund.

on a theory that they failed to disclose the attended vehicle exclusion.[5]

Fireman's Fund, Heritage and Insuramax moved for summary judgment, arguing that Ann Taylor should not have reasonably relied upon the COI. Based upon the language of the COI, the circuit court granted the summary judgments;[6] we agree.

## ANALYSIS

Although informally cited to by prior Kentucky courts, the tort of negligent misrepresentation was first formally adopted in Kentucky in *Presnell Const. Managers, Inc. v. E.H. Const., LLC,* 134 S.W.3d 575 (Ky.2004). The Court in *Presnell* followed a majority of jurisdictions that adopted RESTATEMENT (SECOND) OF TORTS § 552 (1977), as follows:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the infor-

mation or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

*Id.* at 580 (footnote omitted).

We note that Ann Taylor first addresses in its brief the privity of contract issue in this matter. However, the more elementary element of negligent misrepresentation is "justifiable reliance upon the information."[7] *See Foremost Ins. Co. v. Parham,* 693 So.2d 409, 421 (Ala.1997).

As mentioned earlier, Ann Taylor requested a COI for its review to verify that IMC carried acceptable insurance as required by their transportation agreement. In response to this request, Heritage provided two sample COIs to Insuramax, one specifically for Ann Taylor as a certificate holder and one with the certificate holder information left blank. Insuramax retyped the information from Heritage's sample COIs, onto a slightly different ACORD form and provided it to Ann Taylor.

The sample COI that listed Ann Taylor as a certificate holder and which was given to Ann Taylor for its review did not specif-

---

**5.** Other individuals and entities were also named in Ann Taylor's complaint but were voluntarily dismissed.

**6.** The circuit court ruled that Kentucky law applies to this case. This ruling was not appealed by the parties; thus, it is waived.

**7.** We note that parties to this action have cited to unpublished cases failing to meet the

requirements of Kentucky Civil Rule 76.28(4)(c). This is particularly true where the parties have cited to unpublished cases from other jurisdictions. Kentucky Civil Rule 76.28(4)(c) only allows citation to unpublished Kentucky appellate opinions rendered after January 1, 2003. Accordingly, those cases cited in the parties' briefs failing to meet this criteria were not considered in deciding this matter.

ically include the attended vehicle exclusion. However, the COI in bold and capitalized print at the top stated that

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

The COI also prominently stated that

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE [INTERSTATE MOTOR CARRIERS, INC.] FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

The sample COI did include policy numbers, dates, and a reference to coverage of $750,000 per vehicle. It did not list any exclusions or other information.

The declaration page issued in conjunction with the policy Fireman's Fund issued to IMC included that when hauling for Ann Taylor, "[t]he 'Attended Vehicle' wording per Motor Truck Cargo Form—Supplemental Provisions Endorsement CM 70 55 09 90 applies to this customer

only." Thus, for coverage to apply, the vehicle must be attended.

We recognize that according to Ann Taylor, the purpose for requesting the COI was to "verify that IMC carried acceptable insurance as required by the Transportation Agreement."[8] Therefore, a review of what the agreement required regarding insurance and exclusions is necessary. The agreement included that:

8. *INSURANCE*

(a) CARRIER [IMC] shall at all times during the term of this agreement have and maintain in full force and effect ... Cargo ... Insurance with reliable insurance companies acceptable to ANN TAYLOR, INC., and in the following amounts, which amounts may be modified by ANN TAYLOR, INC. subsequently on thirty days written notice: ... $1,000,000 Cargo per shipment; ... [[9]]

(b) CARRIER'S cargo insurance policies shall not exclude coverage for infidelity, fraud, dishonesty or criminal acts of CARRIER'S employee's agents, officers or directors. In the event said policy contains such exclusions, CARRIER shall obtain and furnish a surety bond providing such coverage to the satisfaction of ANN TAYLOR, INC.

* * *

(g) Prior to commencement of any services to be performed hereunder, CARRIER shall deliver to ANN TAYLOR, INC. copies of such insurance policies for ANN TAYLOR, INC.'s approval.

Nothing in the agreement between Ann Taylor and IMC required that the insurance policy could not contain an attended vehicle exclusion. Moreover, the agree-

---

8. Ann Taylor brief at p. 4.

9. Later, Ann Taylor agreed to lower the limits of coverage for cargo liability to $750,000 per shipment.

ment provided that IMC would provide copies of the *policies for Ann Taylor's approval*, not certificates of insurance.

We agree with the circuit court that the COI clearly set forth that it was not a complete recitation of the exclusions and applicable provisions of the insurance policy between Fireman's Fund and IMC. Further, the COI prominently set forth that it conferred no rights and should not be relied upon. "Where an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy. A certificate of insurance is not part of the policy—if it states that there is coverage but the policy does not, the policy controls." RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 242:33 (3d ed. 2008). We find no meaningful difference when this precept is applied to a certificate holder as compared to an additional insured.

Although Kentucky courts have yet to speak on this issue, other courts have. In *Tribeca Broadway Associates, LLC v. Mount Vernon Fire Ins. Co.*, 5 A.D.3d 198, 774 N.Y.S.2d 11, 13 (2004), New York's Supreme Court, Appellate Division, ruled that a certificate of insurance does not confer coverage and is only evidence of a carrier's intent to provide coverage. And as succinctly stated in *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex.2006),

[Plaintiff] argues that it acted diligently in obtaining a certificate of insurance listing it as an additional insured. But the certificate warned that it conferred no rights and was limited by the underlying policy. [Plaintiff] argues, with some force, that there is little use for certificates of insurance if contracting parties must verify them by reviewing the full policy. But the purpose of such certificates is more general, "acknowledging that an insurance policy has been written, and setting forth in general terms what the policy covers."

BLACK'S LAW DICTIONARY 240 (8th ed. 2004). Given the numerous limitations and exclusions that often encumber such policies, those who take such certificates at face value do so at their own risk.

Because of the purpose and nature of a COI, the Court in *TIG Ins. Co. v. Sedgwick James of Washington*, 184 F.Supp.2d 591, 598 (S.D.Tex.2001), *aff'd*, 276 F.3d 754, (5th Cir.2002), held that the plaintiff could not prevail as a matter of law for a negligent misrepresentation claim having relied on a COI, rather than the terms of the policy. Pursuant to *TIG*,

the holder of a certificate of insurance, was warned it was not entitled to rely on the certificate itself for coverage. The certificate stated to the holder that the certificate did not create coverage. The certificate of insurance issued by [Defendant] prominently stated that it was "issued as a matter of information only" and did not "amend, extend or alter" coverage provided by the listed policies. Had Plaintiffs taken the reasonable step of obtaining a copy of [the] Policy ..., Plaintiffs would have learned there was no additional insured coverage in the policy at all.

Thus, the Court finds that Plaintiffs' reliance upon [defendant's] representation of [Plaintiff's] additional insured status was not reasonable. Accordingly, as a matter of law, Plaintiffs' claims for negligent and fraudulent misrepresentation fail.

*Id.* at 604 (internal citations and footnotes omitted); *see also, Donegal Mut. Ins. Co. v. Grossman*, 195 F.Supp.2d 657, 671 (M.D.Pa.2001) (plaintiffs could not reasonably rely on the certificate alone).

We agree with the reasoning in this line of cases. The disclaimer language that is included in the COI at issue in the present case was included in the cases cited *supra*. This fact, particularly when taken in light

of the purpose of COI, i.e., to give evidence of the existence of insurance, illustrates that it was not reasonable for Ann Taylor to rely upon the COI as setting forth all terms and exclusions of the insurance policies at issue. Moreover, the COI naming Ann Taylor as a certificate holder met the requirements of insurance provided for in the transportation agreement.

Ann Taylor has cited to published cases from other jurisdictions supporting a different viewpoint. However, these cases are distinguishable, and we believe the cases we cited *supra* are the better view based on the specific facts of this case.

Ann Taylor cites to *St. Francis De Sales Federal Credit Union v. Sun Ins. Co. of New York*, 818 A.2d 995 (Me.2002). In that case, a transportation agreement included that the carrier would maintain insurance against the loss of property and annually, at the carrier's request, the insurer would issue to each plaintiff a COI to verify that the insurer had issued a policy of insurance to the carrier "for loss of property of its customers from any cause." Id. at 999. The COIs contained disclaimers similar to the ones in the case at bar. However, the COIs described coverage in the underlying policy as " '[c]overing liability assumed by [the carrier] for loss of damage, *from any cause whatsoever*, to property of customers....' " (Emphasis added in *St. Francis*, 818 A.2d at 999). The certificates then listed a number of exclusions but failed to mention any exclusions for theft. The actual policy did include an exclusion for certain thefts.

A theft occurred in the *St. Francis* case but the insurer denied coverage based on an exclusion in the policy that was not one of the exclusions listed in the COIs. Based on the specific language of the COIs regarding that loss would be covered *from any cause whatsoever* and that certain exclusions, but not all exclusions, were listed in the COIs, plaintiffs brought suit. A

jury found that the COIs overstated the extent of coverage and returned a plaintiffs' verdict. Regarding a *fraudulent* misrepresentation claim, the appellate court determined that the terms in the COI that the carrier had insurance to cover its customers for losses " 'from any cause whatsoever' were not mere casual comments or off-hand remarks; rather the representations contained formalized statements of fact concerning insurance coverage, complete with seals and signatures that conveyed credibility." Id. at 1004. Because of the affirmative overstatement of coverage made in the COIs regarding coverage that did not exist, the appellate court determined that these representations were "made in reckless disregard of their truth or falsity." Id.

Ann Taylor also cites to *R.H. Grover, Inc. v. Flynn Ins. Co.*, 238 Mont. 278, 777 P.2d 338 (1989). In *R.H. Grover*, a COI was prepared erroneously, listing plaintiff as the certificate holder and listing professional liability insurance for errors and omissions by the insured up to $400,000. Although policy numbers were stated on the COI, the error on the COI was that the insured did not have professional liability insurance and never had any such coverage or policy. Thus, the COI listed coverage that did not exist.

Despite the errors in the COI, the Montana Supreme Court determined that the insured had not requested from its insurer to procure professional liability insurance and did not pay any premiums for this type of policy. The Court ruled that "[i]t is impossible to find that [the insurer's] erroneous certificate created a 'contract' under which they were bound to procure insurance." Id. at 283–84, 777 P.2d 338. The Court further held that "[i]ssuing the certificate cannot create a 'duty' to procure insurance at a later date." Id. at 284, 777 P.2d 338. The plaintiff argued, however,

that the COI was a promise that the insurance policy existed and that the insured should be estopped from denying coverage. The Court disagreed, ruling that "[t]he certificate cannot be a contract or promise. [The insurer] has promised nothing by issuing the certificate." *Id.*

Despite these rulings, the Court in *R.H. Grover*, determined that the record was replete with evidence that the insured was negligent and negligently misrepresented the coverage based on evidence of: "inadequate supervision of an employee new to the job, failure to follow other established internal office procedures which would have caught the error immediately and failure to notify [the plaintiff]." *Id.* at 285, 777 P.2d 338.

Another case relied upon by Ann Taylor is *Marlin v. Wetzel County Bd. of Educ.*, 212 W.Va. 215, 569 S.E.2d 462 (2002). In that case the Wetzel County Board of Education was to be added as an additional insured pursuant to a construction contract. The COI listed the board as an additional insured; however, the policy did not include it as such. In *Marlin*, the Court held

> [w]e therefore hold that a certificate of insurance is evidence of insurance coverage, and is not a separate and distinct contract for insurance. However, because a certificate of insurance is an insurance company's written representation that a policyholder has certain insurance coverage in effect at the time the certificate is issued, the insurance company may be estopped from later denying the existence of that coverage when the policyholder or the recipient of a certificate has reasonably relied to their detriment upon a misrepresentation in the certificate.

*Id.* at 472–73.

Ann Taylor also cited to *City of Northglenn v. Chevron, U.S.A., Inc.*, 634 F.Supp. 217, 225 (D.Colo.1986), and *Fagan v. John*

*Hancock Mutual Life Ins. Co.*, 200 F.Supp. 142, 143–44 (D.C.Kan.1961). Both of the cases provide that if there is a conflict between the terms included in the COI and the terms of the policy, the COIs terms control. In the *City of Northglenn* case, the COI specifically included a provision regarding the procedures for presenting a notice of claim that differed from the procedures for notice in the policy. Because the COI and policy contained conflicting terms, the Court determined that the two documents must be

> construed together to determine the meaning and effect of the policy. If there is a conflict between the provisions contained in the master policy and the certificate, the certificate controls. In such cases, it is especially significant that the party claiming coverage did not receive a copy of the master policy but instead was furnished only the certificate.

*City of Northglenn,* 634 F.Supp. at 225.

And, regarding *Fagan,* 200 F.Supp. at 144, the Court cited to *Konrad v. Hartford Acc. & Indem. Co.*, 11 Ill.App.2d 503, 137 N.E.2d 855 (1956), for the proposition urged by Ann Taylor, *i.e.*, "that in the event the terms of a master policy and a certificate are in conflict, the certificate will control." However, the *Fagan* case did not turn on this.

As examined, Ann Taylor has cited to several cases wherein, despite disclaimers in COIs similar to the ones presently under review, courts have allowed recovery because affirmative representations or overstatements of coverage in the COI and the policy were in conflict. Thus, in each of the published cases cited by Ann Taylor, the COIs affirmatively set forth provisions that differed from the language in the respective policies. The case at hand does not deal with conflicting language or terms. Accordingly, the situation of con-

flicting language between a COI and a policy is not presently before this Court, and we decline to rule on this issue.

Rather, the COIs at issue gave evidence of the insurance coverage required in the transportation agreement, as Ann Taylor requested. The COIs did not include provisions conflicting with the terms of the insurance coverage provided in the policy at issue. The coverage detailed in the COI listing Ann Taylor as a certificate holder included the coverage required by the transportation agreement: $750,000 per cargo. The fact that the COI did not include any exclusions listed in the policy does not change this. The COI explicitly stated that it should not be relied upon, and while we do not rule today regarding conflicting terms in COIs and policies, we follow the line of cases that hold that a COI is only evidence of insurance coverage and should not be relied upon by a claimant for the full terms of the policy.

Accordingly, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.