2010 ME 68

**Mark L. RANDALL et al.**

v.

**J. Michael CONLEY et al.**

Supreme Judicial Court of Maine.

Argued:  June 15, 2010.

Decided:  July 22, 2010.

Kurt E. Olafsen, Esq. (orally), Olafsen & Butterfield LLC, Portland, ME, Bruce W. Hepler, Esq., Law Offices of Bruce W. Hepler, Portland, ME, for Mark Randall and Randall Law Office, P.A.

Thomas V. Laprade, Esq. (orally), Lambert Coffin, Portland, ME, for J. Michael Conley, Wenonah Wirick, and Conley & Wirick, PA.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1]   Mark L. Randall, J. Michael Conley, and Wenonah M. Wirick formed a law practice partnership. After a short time, tensions arose among the three partners. The partnership agreement requires arbitration of any disputes. The parties filed for arbitration and Randall now appeals from a judgment upholding the arbitrator's award. He argues that the award was procured by fraud and that the arbitrator exceeded his authority in issuing a clarification of the arbitration award.  We affirm the judgment.

## I.  FACTS AND PROCEDURE

[¶ 2]   Randall, Conley, and Wirick signed an agreement under which, in part, Randall transferred and merged all of the assets and interests of his business, Randall Law Office, P.A., in exchange for shares in Conley's law firm, which became Conley, Randall & Wirick, P.A., effective January 1, 2007.  The agreement specified that Randall was transferring all "work in progress, [and] contingent fee cases," and incorporated an attached list of Randall's active and potential cases.

[¶ 3]   The list included cases for clients Licciardi and Roberts, stating that Licciardi was set for trial in early 2007, and Roberts was on a trial list.  Both of these cases were resolved in 2007, and Randall collected fees.  Employees of the newly-merged firm worked on the two cases prior to their resolution.  Randall paid the expenses for those two cases out of his separate account.

[¶ 4]   In July of 2007, the parties met to discuss the status of their business.  At that meeting, the Roberts and Licciardi cases were discussed.  Conley and Wirick testified at arbitration that they believed Randall was obligated to pay the firm the fees from those cases, and they sought at the meeting to discuss those payments. Randall testified that he believed that the fees for those cases had been excluded from the merger agreement, but that he told Conley and Wirick at the July meeting that he wanted to compensate the firm for the time that he spent on the cases in 2007, and that they agreed he would pay $35,000.

[¶ 5]   Conley took notes during the meeting, and a copy of those notes was submitted at the arbitration hearing.  The notes state, in part, that Randall would

pay the firm $35,000 "now. We will work out balance owed at year end." Conley testified at the hearing that the notes were taken during the meeting. Randall did not object to or contradict the notes.

[¶ 6] The relationship between the parties further deteriorated over issues including the case fees and bookkeeping concerns, and Conley and Wirick called a default on the agreement in January 2008. The parties went to arbitration pursuant to the agreement to resolve outstanding disputes including the Roberts and Licciardi fees.

[¶ 7] After a three-day evidentiary hearing, the arbitrator issued an award on October 23, 2008, finding, in part, that the cases listed in the attachment to the agreement "were all part of the [a]greement" and ordering Randall to pay the firm seventy-five percent of the fees earned on the Roberts and Licciardi cases, after deduction of the $40,000 referral fee and the $35,000 already paid, which the arbitrator stated "equals $104,500." On November 21, 2008, the arbitrator issued a "clarification" explaining that he had calculated that amount assuming that the referral fee had not yet been subtracted from the $226,000 total fee amount, and stating that if in fact the referral fee had already been deducted, then his calculation would be in error. On December 9, 2008, the arbitrator corrected the award amount to $134,500. Finally, on February 4, 2009, the arbitrator issued an order finding Randall in contempt for failure to pay and imposing sanctions.

[¶ 8] Randall filed a motion to vacate the arbitration award on January 20, 2009, alleging that the arbitrator had exceeded his powers in various aspects of the award. He amended the motion on March 12, 2009, to include a count challenging the February order and a count alleging that the award was procured by fraud. Randall asserted that he had discovered, after arbitration, a copy of the July meeting notes that differed from the copy submitted to the arbitrator. Randall's copy simply states that Randall will pay $35,000, and does not include the language in the submitted copy that he was paying that amount "now. We will work out balance owed at year end."

[¶ 9] In a judgment entered by the court in the Business and Consumer Docket (Sagadahoc, *Nivison, J.*), the court vacated the arbitrator's contempt order of February 2009, but otherwise confirmed the arbitrator's award. In its judgment, the court held that the document submitted by Randall did not compel a finding of fraud at the arbitration proceeding and additionally held that Randall had not established that a different outcome would have resulted if the arbitrator had the recently-found document. The court also held that the arbitrator's clarification orders were permissible corrections of a computational error.

[¶ 10] Randall requested a hearing on the fraud issue in a motion to alter or amend the judgment. The court denied that motion on November 9, 2009. Randall timely appealed.

## II. DISCUSSION

### A. Award Procured by Undue Means

[¶ 11] On appeal of an arbitration award, we review the judgment of the court for errors of law and "will uphold the Superior Court's confirmation of an arbitration award unless the court was compelled to vacate the award." *Dep't of Transp. v. Me. State Emps. Ass'n*, 1999 ME 7, ¶ 7, 727 A.2d 896, 898. A court "shall vacate an award where . . . [t]he award was procured by corruption, fraud or other undue means." 14 M.R.S. § 5938(1)(A) (2009). The determination of

fraud is a factual finding, which is reviewed for clear error. *See Pine Ridge Realty, Inc. v. Mass. Bay Ins. Co.,* 2000 ME 100, ¶ 29, 752 A.2d 595, 602.

[¶ 12] In the context of a party seeking to vacate a court judgment on the basis of fraud, we have required the party alleging fraud to show "clear and convincing proof that an advantage has been gained in the obtaining of a judgment by an act of bad faith whereby the court has been made an instrument of injustice." *Estate of Paine,* 609 A.2d 1150, 1153 (Me.1992), *cited in Wooldridge v. Wooldridge,* 2008 ME 11, ¶ 9, 940 A.2d 1082, 1084. This is consistent with the standard applied in other contexts. *See* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 60.8 at 76 (2d ed. 1970) ("[I]n all cases where fraud is asserted, it must be proved by clear and convincing evidence."). To prove fraud on a court, we have held that the party asserting the fraud must produce clear and convincing evidence: (1) of a false representation; (2) of a material fact; (3) with knowledge or reckless disregard of its falsity; (4) for the purpose of inducing the court to act in reliance; and (5) actual reliance. *See Adoption of Patricia S.,* 2009 ME 76, ¶ 22, 976 A.2d 966, 972.

■ [¶ 13] We now apply the same standard to arbitration awards. In order to prove that an award was "procured by" fraud or other undue means, the party asserting the fraud must provide clear and convincing evidence of the existence of fraud and that the fraud affected the arbitration award. This is consistent with the approach taken by several federal courts, which require proof of a "nexus" between the fraud and the basis for the arbitration award and will deny a motion to vacate if the award rests on grounds independent from those allegedly affected by fraud. *See, e.g., Forsythe Int'l, S.A. v. Gibbs Oil*

*Co. of Tx.,* 915 F.2d 1017, 1022 (5th Cir. 1990).

■ [¶ 14] "When clear and convincing evidence is required, plaintiffs bear the burden of persuasion to place in the ultimate factfinder an abiding conviction that the truth of [their] factual contentions [is] highly probable." *St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.,* 2002 ME 127, ¶ 26, 818 A.2d 995, 1003 (quotation marks omitted). Randall has not met this burden with regard to either component of the test—proof of fraud, or proof that the award was "procured by" such fraud.

[¶ 15] As the court found, there are a number of non-fraudulent explanations for the disparate copies of the July meeting notes. For example, Conley could have given Randall a copy of the notes, and then, as they continued to talk, jotted down the remaining two lines. Alternatively, Conley could have added the lines to his own copy after the meeting to further clarify for himself what had been said. Neither of these scenarios involves a fraudulent intent, and the court did not err in finding that the existence of the second version did not prove fraud.

[¶ 16] Randall contends that because his affidavit and submission of the second copy of the meeting notes was unrebutted, it creates an inference of fraud. This is incorrect because, in contrast to the case cited by Randall, *LeMay v. Anderson,* 397 A.2d 984, 988 (Me.1979), the document submitted by Randall here could reasonably support multiple conclusions, and the court was not compelled to accept Randall's interpretation of the evidence, *see In re Estate of Fournier,* 2009 ME 17, ¶ 17, 966 A.2d 885, 890 ("The weight and credibility of evidence are for the trial court to determine."). Randall bears the burden to prove fraud by clear and con-

vincing evidence. *Wooldridge*, 2008 ME 11, ¶ 9, 940 A.2d at 1084.

[¶ 17] Alternatively, Randall failed to prove that any fraud "procured" the award. To explain his award of the case fees, the arbitrator noted that the case list was part of the merger agreement, and did not reference the July meeting or the notes. His award was based on the agreement itself, rather than on any modification that may have occurred at the July status meeting. Additionally, Conley and Wirick did not rely upon the contested language during the arbitration hearing, and there is no indication that this document was central to the issue or even affected the award. Under these facts, Randall failed to prove by clear and convincing evidence that the award was procured by fraud or other undue means.

B.   Failure to Hold an Evidentiary Hearing

■ [¶ 18] "We review the court's decision not to hear testimony only for abuse of discretion." *Concord Gen. Mut. Ins. Co. v. N. Assurance Co.*, 603 A.2d 470, 472 (Me.1992); *see also* M.R. Civ. P. 43(e) ("When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions.").

[¶ 19] The court did not abuse its discretion here. Although an evidentiary hearing might have helped the court determine how the disparate versions of the document came into being, it would not have resolved the question of whether an alteration of the document by Conley had influenced the award.

C.   Clarification Order

■ [¶ 20] On application of a party,[1] an arbitrator may modify or correct an award for grounds provided by statute "or for the purpose of clarifying the award." 14 M.R.S. § 5935 (2009). Grounds for modification of an award include where "[t]here was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award . . . [or][t]he award is imperfect in a matter of form, not affecting the merits of the controversy." 14 M.R.S. § 5939(1)(A), (C) (2009); *see also Anderson v. Elliott*, 555 A.2d 1042, 1047 (Me.1989) (stating that under section 5939, "[e]ither party may . . . move to modify or correct the award, but only to rectify a technical error or an 'evident miscalculation' or misdescription").

■ [¶ 21] We review for errors of law the court's judgment that the award was within the arbitrator's powers. *See Dep't of Corr. v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 2000 ME 51, ¶¶ 8–9, 747 A.2d 592, 594. "The burden of proving that the arbitrator exceeded his or her authority lies with the party seeking to vacate the arbitration award." *Bennett v. Prawer*, 2001 ME 172, ¶ 8, 786 A.2d 605, 608.

[¶ 22] Here, the arbitrator's order of December 9, 2009, was a permissible clarification of the award, correcting a computational error. The arbitrator's intended formula was clear from the language of the original award, but because of the arbitrator's misconception that referral fees had not yet been deducted from the total fee amounts, his conclusion that the calculation "equals $104,500" was in error. Correction of this statement was not a reopening

---

1.   It is not evident from the record whether a party moved for clarification here. However, the arbitrator stated in the award that he was retaining jurisdiction for purposes of clarification.

of the merits of the claim, and the court did not err in holding that the amendment was within the arbitrator's authority.

The entry is:

Judgment affirmed.