2011 ME 89

**NORTH EAST INSURANCE CO.**

v.

**Samantha YOUNG et al.**

Supreme Judicial Court of Maine.

Argued: April 14, 2011.
Decided: Aug. 16, 2011.

Thomas S. Marjerison, Esq., Matthew T. Mehalic, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, ME, for Samantha Young.

Robert Hatch, Esq., Jason P. Donovan, Esq., Thompson & Bowie, LLP, Portland, ME, for Rebekah Alley.

John S. Whitman, Esq., Carol I. Eisenberg, Esq. (orally), Richardson, Whitman, Large & Badger, Portland, ME, for North East Insurance Company.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] Samantha Young and Rebekah Alley were injured while riding in a vehicle driven by a friend. They appeal from a judgment entered in the Superior Court (Cumberland County, *Crowley, J.*) in which the court held the driver liable but permitted North East Insurance Company to rescind its automobile insurance policy on the vehicle he was driving. Specifically, Young and Alley challenge the court's entry of summary judgment in favor of North East on its complaint seeking a declaratory judgment that it had no duty to defend or indemnify the driver. Because we agree with Young and Alley that there are genuine issues of material fact regarding whether the driver's mother made a material, fraudulent misrepresentation to North East in obtaining the insurance policy on the vehicle in question, we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

[¶ 2] On July 3, 2008, Sandra Hutchinson asked her sixteen-year-old son, Joshua

Weeks, to drive her Mercury Tracer to bring his younger sister to Stonington. After he dropped his sister off, he picked up four friends, including Alley and Young. While returning to Deer Isle, the Tracer crossed the centerline and collided head-on with a dump truck. All of the passengers in the Tracer were injured.

[¶ 3] In November 2008, North East filed a complaint against Weeks, Hutchinson, Young, Alley, and other injured parties not involved in this appeal seeking a declaratory judgment that North East had no duty to defend or indemnify Hutchinson or her son for any claims arising from the collision because Hutchinson had made material fraudulent misrepresentations in applying for the automobile insurance. Young and Alley filed answers, but Hutchinson and Weeks did not. Young included a counterclaim against North East alleging that North East was equitably estopped from denying coverage, and both Young and Alley filed cross-claims against Hutchinson and Weeks alleging their tort liability. North East did not provide counsel to defend Hutchinson or Weeks, and because Hutchinson and Weeks failed to respond to the cross-claims, defaults were entered against them.

[¶ 4] In March 2010, both Young and North East moved for summary judgment on North East's complaint for a declaratory judgment. Alley moved for leave to join in Young's motion. The parties filed supporting and opposing statements of material facts in accordance with M.R. Civ. P. 56(h)(1) and (2). In conjunction with North East's reply statement of material facts, North East included several additional facts, which is not authorized by M.R. Civ. P. 56(h)(3), in an effort to establish how much North East would have charged to insure Weeks under Hutchinson's policy.

[¶ 5] Based on the properly presented statements and referenced evidence, the following facts are undisputed on summary judgment, except as indicated. On April 2, 2008, Hutchinson called the Varney Agency in Ellsworth, an agent of North East, seeking an automobile insurance policy to cover two vehicles owned by her husband and her. Hutchinson spoke with a customer service representative at Varney. The representative asked questions of Hutchinson to complete an insurance application and get insurance quotes. The computer program that the representative was using required her to enter an answer to each question before the program would proceed to the next question. The representative recorded Hutchinson's responses as "no" to the following questions:

ARE THERE ANY OTHER RESIDENTS IN THE HOUSEHOLD 14 OR OLDER?

ARE THERE ANY OTHER DRIVERS LICENSED IN OR OUT OF THE HOUSEHOLD?

Hutchinson did not mention her sixteen-year-old son, Weeks, during the conversation. At the time, he was living in her household, and he had held a Maine driver's license since August 23, 2007. The parties dispute whether Hutchinson intended to deceive the Varney Agency for the purpose of obtaining a less expensive policy. Hutchinson signed an application for insurance at the Varney office on April 4, 2008. North East issued a policy insuring the two vehicles.

[¶ 6] On May 6, 2008, Hutchinson called the Varney Agency and asked to add coverage for two vehicles, including the Mercury Tracer that was involved in the accident, and to add her daughter as a driver, but she did not mention her son. The parties dispute whether the customer service representative asked Hutchinson about other drivers during

this conversation. Hutchinson also called the Varney Agency on June 20, 2008, to drop one vehicle from the policy and add another; again, she did not mention Weeks. At no time before the accident did Hutchinson receive a copy of her insurance policy because, although the Varney Agency emailed the policy to Hutchinson, a computer problem prevented her from obtaining it. At around the time that Hutchinson was arranging the automobile insurance, she allowed her homeowners insurance to lapse because she could not afford the $500–per–year premium.

[¶ 7] The North East policy on the Tracer covered "damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." By its terms, the policy defined an "insured" to include a "family member" and "[a]ny person using" the automobile with permission.

[¶ 8] On this record, the court denied summary judgment to Young and Alley, and entered a summary judgment in favor of North East on North East's complaint for declaratory judgment. The court stated, "the undisputed material facts establish by a clear and convincing standard that Hutchinson fraudulently misrepresented or omitted material information about her son during the application process." Accordingly, the court declared that rescission was proper and therefore North East had no duty to defend or indemnify Weeks or Hutchinson for their liability. The court dismissed Alley's motion for leave to join Young's motion for summary judgment as moot.

[¶ 9] Because Weeks and Hutchinson had defaulted in answering the cross-claims of Young and Alley, the court held a nonjury trial on the sole issue of damages. The court entered a judgment in favor of Young against Weeks for $150,000 plus costs and pre- and post-judgment interest, and in favor of Alley against Weeks for $325,000 plus costs and pre- and post-judgment interest. On September 1, 2010, the court entered a final judgment in favor of North East against all defendants and in favor of Young and Alley against Weeks. The court determined that the discharge of Hutchinson's personal liability in bankruptcy had rendered the cross-claims against her moot. Young and Alley appealed.

## II. DISCUSSION

[¶ 10] We begin by considering the issue of appellate standing, after which we discuss the process by which a court determines whether an insurer has a duty to defend or indemnify and review the court's entry of summary judgment.

### A. Standing

[¶ 11] Whether a party has standing to bring a claim is a jurisdictional question. *Stull v. First Am. Title Ins. Co.,* 2000 ME 21, ¶ 11, 745 A.2d 975, 979. "Litigants normally may not assert the rights of third parties but must demonstrate that they have received some particularized injury in order to have standing to raise their claim." *Id.* A person has suffered a particularized injury when the other party's actions "have adversely and directly affected [that party's] property, pecuniary or personal rights." *Id.*

[¶ 12] An injured party has a right of action against a tortfeasor's insurer once the tortfeasor's liability has been established. *Smith v. Allstate Ins. Co.,* 483 A.2d 344, 347 (Me.1984). Because Young and Alley appropriately filed a cross-claim against North East and waited until a final judgment had been entered before bringing their appeal, they have standing to challenge the court's determi-

nation that they cannot pursue their claim for recovery from North East. Although the duties to defend and indemnify are owed to North East's insureds—not to Young and Alley directly—Young and Alley have standing to challenge the ruling in this matter because that ruling directly affects their pecuniary rights as against North East. *See Stull,* 2000 ME 21, ¶ 11, 745 A.2d at 979. Accordingly, we now examine the law concerning the duties to defend and indemnify and review the court's entry of summary judgment.

## B. Duties to Defend and Indemnify

[¶ 13] "An insurer's duty to defend is a question of law that is determined by comparing the allegations in the underlying complaint with the provisions of the insurance policy." *Commercial Union Ins. Co. v. Alves,* 677 A.2d 70, 72 (Me. 1996). An insurer is obligated to defend an insured "if any legal or factual basis exists which could be developed at trial that would obligate the insurers to pay under the policy." *Id.* In essence, the purchaser has obtained protection from the cost of defending "any lawsuit that could fall within coverage." *N. Sec. Ins. Co. v. Dolley,* 669 A.2d 1320, 1322 (Me. 1996).

[¶ 14] For this reason, in most circumstances, an insurer has a duty to defend and cannot avoid this duty "by establishing, before the underlying action has concluded, that ultimately there will be no duty to indemnify." *Patrons Oxford Mut. Ins. Co. v. Garcia,* 1998 ME 38, ¶ 6, 707 A.2d 384, 385 (quotation marks omitted). An insurer typically may not initiate a complaint for declaratory relief until liability has been determined in proceedings where the insurer has defended its insured. *See id.* ¶¶ 6, 7, 707 A.2d at 385–86. Rather, in ordinary circumstances, a complaint asserting the liability of the insured

is filed, and a court determines in that action whether there is a duty to defend. *See Penney v. Capitol City Transfer, Inc.,* 1998 ME 44, ¶ 5, 707 A.2d 387, 389. Issues of liability are then adjudicated, and finally the court determines whether the insurer has a duty to indemnify. *See id.*

[¶ 15] We have, however, condoned earlier consideration of the duties to defend and indemnify when an insurer disputes those duties based on facts that are not related to the question of the insured's liability, such as "nonpayment of a premium, cancellation of a policy, failure to cooperate or lack of timely notice." *Garcia,* 1998 ME 38, ¶ 7, 707 A.2d at 386 (quotation marks omitted). A declaratory judgment action is appropriate in such circumstances because "the coverage dispute depends entirely on the relationship between the insurer and the insured, not on facts to be determined in the underlying litigation." *Id.*

[¶ 16] Because the coverage dispute in this matter turned entirely on the relationship between North East and its policyholder, the court appropriately considered the issues of the duty to defend and indemnify together before determining Hutchinson's or Weeks's liability. The court concluded that North East had no obligation to defend or indemnify Weeks, after which the court entered a judgment against Weeks by default, awarded damages, and determined that the issue of Hutchinson's liability was moot due to her declaration of bankruptcy. We now review the court's determination on summary judgment that North East had no duty to defend or indemnify Hutchinson or Weeks because Hutchinson fraudulently misrepresented or omitted material information about her son when she applied for automobile insurance.

C. Summary Judgment

 [¶ 17] We review the court's entry of summary judgment de novo, viewing the properly submitted evidence in the light most favorable to the nonprevailing party, "to determine whether the record reveals a genuine issue of material fact and the plaintiff has established a prima facie case as to each element of the claim." *Stewart–Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773, 775. "A material fact is one that can affect the outcome of the case, and there is a 'genuine issue' when there is sufficient evidence for a factfinder to choose between competing versions of the fact." *Id.*

[¶ 18] Pursuant to 24-A M.R.S. § 2411 (2010), recovery may be denied upon proof that a misrepresentation, omission, or concealment was (1) fraudulent and (2) material to the acceptance of the risk. *See Liberty Ins. Underwriters, Inc. v. Estate of Faulkner*, 2008 ME 149, ¶¶ 14–18, 957 A.2d 94, 99–100. The parties do not dispute that both elements must be established for North East to deny recovery here because the insurance at issue is not "life, credit life, disability, long-term care, accidental injury, specified disease, hospital indemnity or credit or accident insurance" for which "an insurer need only prove one of the acts described in this section." 24-A M.R.S. § 2411.

 [¶ 19] To establish the first element of a fraudulent omission, a party must demonstrate

> (1) a failure to disclose; (2) a material fact; (3) where a legal or equitable duty to disclose exists; (4) with the intention of inducing another to act or to refrain from acting in reliance on the non-disclosure; and (5) which is in fact relied upon to the aggrieved party's detriment.

*Picher v. Roman Catholic Bishop of Portland*, 2009 ME 67, ¶ 30, 974 A.2d 286, 295;

*see also Randall v. Conley*, 2010 ME 68, ¶ 12, 2 A.3d 328, 331 (providing similar elements for claims of fraudulent misrepresentation). Proof that an individual had the *intention* to induce action in reliance on a material omission is essential in this context. *See Picher*, 2009 ME 67, ¶ 30, 974 A.2d at 295; *see also Randall*, 2010 ME 68, ¶ 12, 2 A.3d at 331. The party must establish the facts demonstrating fraudulent misrepresentation or omission by clear and convincing evidence. *See Randall*, 2010 ME 68, ¶ 12, 2 A.3d at 331.

[¶ 20] Summary judgment may not be entered if the record reveals material factual disputes concerning the circumstances under which the application for insurance was completed. *See Kinney v. Me. Mut. Group Ins. Co.*, 2005 ME 70, ¶ 16, 874 A.2d 880, 884–85. For instance, a trial will be necessary if there are disputes of fact regarding who was responsible for any omissions in the answers to questions posed in the application, who resides in the applicant's household, or whether omissions constituted material misrepresentations. *Id.*

[¶ 21] In the matter before us, the summary judgment record demonstrates the existence of genuine disputes of material fact that must be decided by a factfinder. In particular, the parties dispute whether Hutchinson intentionally omitted naming Weeks as a driver living in her home in order to obtain insurance and whether a reasonable insurer would have denied coverage or would have required a higher premium than the agreed rate if aware of Weeks's presence in the household.

[¶ 22] The summary judgment record contains Hutchinson's statement, under oath, that she answered the insurance agent's questions based on an understanding that she was seeking insurance only for her husband and herself. Hutchinson

stated that she could not recall any of the questions that she was asked and therefore did not remember any questions asking about other licensed drivers in or out of her household. The evidence does not demonstrate as an undisputed fact that Hutchinson was asked the critical questions or understood the important purposes for which the insurance agent questioned her.

[¶ 23] Because, even assuming the questions were asked, the evidence is inconclusive concerning whether Hutchinson answered as she did out of carelessness, misunderstanding, or a fraudulent purpose to obtain insurance at a lower rate, the entry of judgment is premature. A factfinder must evaluate the weight and credibility of the evidence to determine whether Hutchinson fraudulently omitted material information in order to obtain insurance from North East, and whether North East would have issued the policy—or would have required a higher premium or different coverage—had Hutchinson provided information about her son.[1]

[¶ 24] Accordingly, we vacate the court's judgment and remand the matter for fact-finding on the coverage issues. Because factual questions, and potential questions of the proper remedy, remain to be determined, we do not reach the parties' additional arguments regarding whether the remedy of policy rescission is precluded by statute when such rescission would deprive injured third parties of compensation for their damages. *See* 24–A M.R.S. § 2903 (2010) (rendering an insurer's liability "absolute whenever such loss or damage, for which the insured is responsible, occurs"); *see also* 24–A M.R.S. § 2411 (preventing "a recovery under the policy or contract" when a person has

made material, fraudulent "[m]isrepresentations, omissions, concealment of facts and incorrect statements").

The entry is:

Judgment vacated; remanded for further proceedings.

---

1. The additional facts that North East asserted in connection with its reply statement of material facts are not properly part of the summary judgment record. *See* M.R. Civ. P. 56(h)(3), (4).