STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER DOCKET
Location: Portland
DOCKET NO. CV - 16 - 12

XPRESS NATURAL GAS, LLC and )
XNG MAINE, LLC, )
)
          Petitioners )
v. )
)
WOODLAND PULP, LLC, )
)
          Respondent. )

**ORDER ON PENDING
MOTIONS**

Before the Court are five motions. The Petitioner filed applications seeking order of the Court vacating the initial arbitration award, the Supplementation Arbitration Award, and the Second Supplemental Arbitration Award. Petitioner further moves the Court to clarify the enforceability of the Arbitration Awards. Respondent moves the Court to confirm the Arbitration Determinations.

I.     Background

In 2011, Woodland Pulp, LLC ["Woodland"] constructed the Woodland Pipeline, a private natural gas pipeline. On or about August 29, 2012, Woodland entered a Master Facility Agreement [the "Agreement"] with Xpress Natural Gas, LLC ("Xpress").[1] The Agreement incorporated the Pipeline Capacity Agreement [the "Capacity Agreement"].

In 2013, XNG began storing gas in the pipeline. XNG asserted that it had contracted for the right to store gas in the pipeline. Woodland contended that

---

[1] In 2013, Xpress assigned all of its rights in the contracts between the parties to XNG Maine, LLC ["XNG"].

1

XNG was obligated to balance its gas nominations and was not permitted to store gas in the pipeline pursuant to the Capacity Agreement. The parties arbitrated the dispute pursuant to Section 8.01 of the Capacity Agreement.

The Arbitrator issued a decision on November 25, 2015 finding that the Capacity Agreement includes an implicit term requiring XNG to reasonably balance its gas nominations and noted that specific balancing parameters must be set. The Arbitrator deferred his determination of the limits of acceptable imbalance under the Capacity Agreement to give the parties 30 days to negotiate an agreement. The parties submitted proposals to the Arbitrator. On March 1, 2016, the Arbitrator issued a Supplemental Decision adopting much of Woodland's proposal. On April 8, 2016, the Arbitrator issued his Decision on Woodland Pulp's Motion for Attorney's Fees and Costs awarding Woodland $450,782 in attorney's fees and $68,000 in costs.

Prior to the issuance of the Arbitrator's Supplemental Decision, XNG filed an Application to Vacate the Arbitrator's 11/25/15 Decision. XNG filed the Application to Vacate Arbitrator's Supplemental Decision before the Arbitrator issued the Decision on Woodland Pulp's Motion for Attorney's Fees and Costs.

II.      Standard of Review

Determinations of an arbitrator will only be vacated where the arbitrator exceeds his or her scope of authority. *Commercial Union Ins. Co. v. Me. Employers' Mut. Ins. Co.*, 2002 ME 56, P8, 794 A.2d 77 (Me. 2002) ("When an arbitrator stays within the scope of its authority, the award will not be vacated even when there is an error of law or fact.") The party moving to vacate bears the burden of persuasion. *Randall v. Conley*, 2010 ME 68, 2 A.3d 328 (Me. 2010).

2

III.    Discussion

*A. Applications to Vacate Arbitration Awards and Motion to Confirm*

XNG filed Applications to Vacate Arbitration Awards alleging that the Arbitrator exceeded his authority by ruling that the parties must amend their contract to include a provision that had been previously rejected by the parties, namely limitations on the permissible imbalance of gas nominations.

> When an arbitrator's decision rests on interpretation of a contract under which the parties' disputes arose, an arbitrator exceeds his or her authority pursuant to 14 M.R.S. § 5938(1)(C) only if the arbitrator goes outside the agreement and '[only] if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator was not possible under a fair interpretation of contract.'

*Stanley v. Liberty*, 111 A.3d 663, 2015 Me. LEXIS 21, 2015 ME 21 (Me. 2015); *citing Granger N., Inc., v. Cianchette*, 572 A.2d 136, 139 (Me. 1990).

XNG specifically argues that by "(1) ordering the parties to amend the agreement to include balancing provisions, and (2) requiring XNG to disclose information about its expected nominations and usage of natural gas to Woodland", the Arbitrator exceeded his authority. XNG argues that the parties intentionally left the Capacity Agreement silent on balancing and that it was unreasonable to read the Capacity Agreement to limit the imbalance. Further, XNG asserts that Section 8.01 of the Capacity Agreement does not explicitly provide an arbitrator the authority to amend the Capacity Agreement nor does the current situation meet the requirements for amendment of the Capacity agreement pursuant to Section 11.10.

Woodland argues that the Arbitrator did not "amend" the agreement, but instead found that the Capacity Agreement included an implicit requirement

3

that XNG reasonably balance its gas nominations. Woodland cites to *Top of the Track Assocs. v. Lewiston Raceways, Inc.*, 654 A.2d 1293, 1295 (Me. 1996), for the contention that "[t]he lack of an express term, however, does not preclude the existence of an implied obligation." Woodland notes that the Arbitrator looked to the industry standard and found that the "[s]tandard industry practice for customers of natural gas is to match daily nominations with actual usage." Accordingly, Woodlands contends that the Arbitrator correctly interpreted an implicit requirement of the Capacity Agreement and properly set explicit parameters, which was well within the authority of the Arbitrator.

After review of the Agreement, the Capacity Agreement, and the determinations by the Arbitrator, the Court finds that a fair and reasonable mind could find that the Capacity Agreement implicitly requires balancing. The Court further finds that a fair and reasonable mind could fairly interpret the Capacity Agreement to require limitations on any imbalance. See *Top of the Track Assocs. v. Lewiston Raceways*, 654 A.2d at 1295 ("[A] contract includes not only the promises set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it was made." *quoting Sacramento Nav. Co. v. Salz*, 273 U.S. 326, 329, 71 L. Ed. 663 (1927)). Therefore, the Court finds that the Arbitrator did not exceed the scope of his authority in his rulings.

XNG also moves the Court to vacate the award of fees and costs to Woodlands. Article VIII of the Capacity Agreement provides that " the Arbitrator, shall, to the extent possible, determine a prevailing party and shall require the other party to reimburse the prevailing party for its costs and

4

expenses including attorney's fees...." Capacity Agreement, Art. VIII. The Arbitrator interpreted the Capacity Agreement and awarded fees to Woodlands finding that Woodlands was the prevailing party. The Arbitrator further found that the Capacity Agreement implicitly required that the award be "reasonable" and therefore found that not all of the charges claimed by Woodland were reasonably connected to the litigation.

Similar to the reasoning employed above, the Court finds that a fair and reasonable mind could find interpret the Capacity Agreement as compelling XNG to pay reasonable costs and fees to Woodlands. The Court denies XNG's Application to Vacate Second Supplemental Arbitration Award.

### B. Motion to Clarify Enforceability Pending Final Judgment

XNG seeks order of the Court clarifying that the pending arbitration awards are not enforceable until such time as the awards are confirmed by a final judgment of the Court. The Court finds that this issue is not properly before the Court. *See Wagner v. Secretary of State*, 663 A.2d 564, 567 (Me. 1995) ("[W]e are not presented with a concrete, certain, or immediate legal problem"). Because this order may, or may not be, final judgment in the case, there is no immediate case or controversy which requires Court action.

### IV.    Conclusion

The Court denies XNG's Application to Vacate Arbitration Award, XNG's Application to Vacate Supplemental Arbitration Award, and XNG's Application to Vacate Second Supplemental Arbitration Award.

The Court grants Woodland's Motion to Confirm Arbitration Award.

The Court denies without prejudice XNG's Motion to Clarify Enforceability.

The Clerk is directed to incorporate this Order into the docket by reference in accordance with M.R. Civ. P. 79(a).

DATE:  9/19/16                          _____/s_____
                                        **Michaela Murphy**
                                        **Justice, Business and Consumer**

**XPress Natural Gas, LLC, et al**

**v.**

**Woodland Pulp, LLC**

**BCD-CV-16-12**

**Petitioners:**

**XPress Natural Gas, LLC** et al. Timothy Norton, Esq.
Kelly, Remmel & Zimmerman
PO Box 597
Portland ME 04112

**Respondent:**

Woodland Pulp, LLC  William S. Harwood, Esq.
Verrill Dana
One Portland Square
Portland ME 04112-0586