STATE OF MAINE                              SUPERIOR COURT
CUMBERLAND, ss.                             Docket No. CV-14-102

ALCO COMPANY, INC., et al.           )
                                     )
        Plaintiffs,                  )
                                     )        **JUDGMENT**
v.                                   )
                                     )
ACE TRAILER AGENCY, et al.           )
                                     )
        Defendants.                  )

This matter came before the court for a jury-waived trial on September 16, 2016. Plaintiffs were present for trial with thier attorney, Peter Evans. Defendants Ace Trailer Agency, Laura Robbins and Keith Robbins (Ace Defendants) were present with their attorney, Matthew Warner. Sherri Alger did not appear for trial.

After careful consideration of the evidence, the Court finds in favor of the Defendants for the following reasons.

## I.      *Facts*

Plaintiff Alco Company (hereafter "Alco") is a trailer registration business, authorized by the State of Maine to process trailer registrations for customers nationwide. Alco is owned by Plaintiff Joe Alger. Alco was started by Alger's father in 1974 and has served approximately 3,500 customers.

Alco lists its standard pricing structure on its website, which is publicly available. Alco provides prices below its publicly listed prices to some of its customers. Alco does not require that its customers keep Alco pricing secret through a non-disclosure agreement or otherwise. No person or company, including

Plaintiffs—Peter Evans, Esq.
Defendants—Matthew Warner, Esq.

1

any of Alco's current or past customers, is bound by an exclusivity agreement or any other legal instrument to use Alco as their trailer registration agent.

Keith Robbins and Laura Robbins opened Ace Trailer Agency in 2013. Before opening Ace, Keith Robbins worked as a self-employed IT technician and as a customer recruiter for a company called Cuplex, and specialized in cold-calls to potential customers. In just over three years of business Ace Trailer Agency has served 3, 405 customers. No person or company, including any of Ace's current or past customers, is bound by an exclusivity agreement or any other legal instrument to use Ace as their trailer registration agent.

Defendant Sheri Robbins-Alger is the sister of Keith Robbins. Sheri is also the ex-wife of Joe Alger, and worked for Alco for over a decade. As an employee of Alco, Sheri was in regular contact with employees of Alco's customers, including Alco's largest customers such as Semo Tank/Baker Equipment Co. and Evergreen America Corp. Alco never asked Sheri to sign a non-competition agreement, non-solicitation agreement, or non-disclosure agreement. Sheri never did sign a non-competition agreement, non-solicitation agreement, or non-disclosure agreement. Alco "laid off" Sheri in late 2012. In late 2012, or early 2013, Joseph F. Alger Sr hired Michelle Alger (his daughter) instead of Sherri Alger when business picked back up.

In early 2013, Keith contacted Sheri and asked her for advice about starting a trailer registration company. Sheri met with Keith and provided him with a list of items he would need to open a trailer registration business, and brought with her to this meeting two CD-ROMs. Sheri worked for Ace for four weeks in April and May 2013. Sheri was initially offered a one-third (1/3) ownership interest in Ace, which

2

she declined, choosing to become an employee of Ace. Defendant Laura Robbins states in Joint Exhibit 1 that "we were unable to give her a paycheck [for the first 3 weeks] and she was fine with that just to screw you. Now all of a sudden she is talking about paychecks owed to her etc."

These were the first four weeks (the first three as a volunteer, the last as an employee) Ace was open for business. During her four weeks in Ace's office, Sheri's responsibility was to solicit potential trailer registration customers. Before she started in Ace's office, Keith and Laura informed Sheri that Ace could not pay her. Keith would not permit Sheri to start working for Ace until he confirmed that she did not have a non-disclosure or non-competition agreement with Alco. Ace did pay Sheri for her final week with the company. Sheri stopped working on her own accord for Ace in May 2013 and has never worked for Ace since that time.

After this lawsuit was filed and named Sheri as a defendant, she went with Joe Alger to his attorney's office, and with the help of plaintiffs' attorney prepared an affidavit which she submitted in opposition to defendants' motion to dissolve attachment, even though this motion sought to dissolve the attachment as to all defendants including Sheri.

When Sheri first met with Keith and Laura about opening Ace, she brought two CD-ROMs with no exterior markings. Keith and Sheri opened the CD-ROMs using a computer at Ace's office. The CD-ROMs were not password protected. The CD-ROMs contained files which, in turn, contained a list of individuals and companies that had hired Alco to register trailers at some point since Alco opened. The CD-ROMs also contained a mailing address for each of these Alco clients. Keith

3

and Sheri printed the list of people who had hired Alco, along with their addresses, and did not print any other information from the CD-ROMs. At this point, Keith removed the CD-ROMs from his computer and returned them to Sheri. Keith proceeded to delete from his computer all files related to the CD-ROMs. He did so because as a matter of practice he deletes extraneous files from his computer systems.

Keith and Laura did not see the CD-ROMs again until 2015 when Attorney Evans for Plaintiff brought them to Attorney Warner's office. In Attorney Evans' presence, pursuant to agreed discovery procedure, Keith opened the CD-ROMs on his laptop. They were not password protected and contained the same information they contained the first time Keith opened them: names and addresses of anyone who had ever hired Alco since Alco opened.

Immediately after opening, Ace aggressively recruited clients through a number of strategies including advertising on the radio, on Facebook, in national publications, and by cold calling potential customers identified through contact information taken from trucks observed on Maine highways.

Keith Robbins identified a great number of potential customers by using online databases such as quicktransportsolutions.com, which contains contact information for many trucking companies.

In an effort to attract customers, Ace touted its competitive pricing and its customer service. Sheri also began soliciting her former contacts from her tenure at Alco.

In Laura's presence, Sheri marked on the printed list of Alco clients those names she wanted to contact, and those she did not want to contact. Sheri drafted a form letter to send to her contacts, which Keith revised. The letter informed potential clients that Sheri had left Alco for Ace, and then touted the convenience and low pricing of Ace. The letter did not say anything about Alco other than mention that Sheri worked with Alco for 18 years. Laura addressed every envelope that contained one of Sheri's letters. Ace sent the letter to some, but not all, of Sheri's contacts from her tenure with Alco. Ace did not send any letters under Sheri's name that Sheri did not personally sign, nor did Ace send any of these letters after Sheri's four weeks at Ace's offices. Ace did not keep a copy of any of the letters sent under Sheri's name, nor did it keep a record of who these letters were sent to. Ace destroyed the hard copy of the Alco client list one page at a time, as Laura and Sheri used the list to address letters and envelopes.

Neither party presented any evidence to buttress or refute the contention that these letter-solicitations, such as they are, proximately caused, in whole or in part, the 70 common customers between the two companies to abandon Alco for Ace.

Evergreen was a long-time client of Alco. Ace did not send a letter to Evergreen America Corp. because Laura saw Evergreen's name crossed out on the printed list of Alco clients. The first communication between Ace and Evergreen occurred in August 2013 when Evergreen contacted Ace to inquire about Ace's pricing and service. It is unknown how Evergreen obtained Ace's contact information, though this could have been obtained through a simple Google search.

5

Alco was engaged in a dispute with Evergreen around the time Evergreen contacted Ace, and this dispute continued for several years. At one point, Joe Alger sent a letter to Barbara Chi at Evergreen stating that "I have now had to retain a lawyer to collect the monies owed to Alco Co." and "[y]ou lied to us and that is why we no longer would process replacement plates or register any new chassis." When Evergreen contacted Ace, Ace agreed to register new chassis and handle new registrations generally for the company. Evergreen sent Ace a spreadsheet containing Alco's pricing for different types of registrations, and asked Ace to enter its own pricing directly beneath Alco's. Keith reviewed the spreadsheet, and then purposefully offered lower prices than Alco in an effort to recruit Evergreen as a client. After receiving Ace's price quotes, Evergreen began hiring Ace to process some of its trailer registrations.

After Evergreen began hiring Ace, on December 11, 2014, Joe Alger sent an email to Barbara Chi addressing her "accusation that Alco Company is slow to deliver mail" and excoriating Evergreen for asking Alco to lower its prices:

> "*You should be thanking Alco Company for saving Evergreen millions over our companies 15+ year history yet you ask us for lower prices based on a company we are currently suing for allegedly stealing our customer contact list that came out of our safe within our office and using that list to under cut prices and contact customers that were ours. WHAT A WAY TO PAY BACK OUR COMPANY!!*" (Def.s' Ex. 1 & J. Alger Testimony.)

Evergreen continues to do business with both Alco and Ace, and in 2016 paid Alco $13,516.00.

Ace did not send a letter to SemoTank/Baker Equipment because Keith and Laura witnessed Sheri calling Becky, her contact at SemoTank, by telephone before

6

they ever started sending letters. When Sheri called Becky at SemoTank she appeared to dial Becky's phone number from memory. SemoTank/Baker Equipment hired Ace without Ace ever sending them a letter or otherwise using any information on the Alco discs.

Since opening in 2013, Ace has processed registrations for more than 3,400 customers. Of these more than 3,400 customers, only 70 have at some point also hired Alco. Joint Exhibit 2 is a stipulated list of 'common customers' – the only customers who have hired both Alco and Ace at some point in the respective companies' histories. Ace did not send a letter to all of the parties' common customers, and does not know for sure if it sent a letter to any of the common customers because it did not keep a record of letters sent. Ace does not know why any particular common customer hired Ace to process one or more trailer registrations.

According to Joe Alger, if these common customers had hired Alco instead of Ace, Alco would have made a greater profit than Ace on at least 61 of these customers. Alco's profit would have been greater than Ace's because Alco's prices are higher than Ace's. Of the 70 common customers, many of these had not hired Alco to process any trailer registrations for at least two or more years prior to Ace opening. None of the 70 common customers committed to any sort of arrangement requiring them to hire Alco and not to hire Ace. Because customers are not bound to any particular trailer registration agent, it is impossible for Ace to know if, when, and for how many registrations a customer will higher Ace in the future.

7

Although he does not know for sure where the discs came from which Sheri brought to Ace, Joe Alger deduced at trial that Sheri downloaded the information onto the discs from Alco's computer system. This is different from his previous assertion to Evergreen that the discs "came out of our safe within our office." (Def.s' Ex. 1.)

Sheri had the apparent capability to either download customer names and addresses from Alco's computer system, or access discs in Alco's safe. Sheri did not have a non-disclosure, non-competition, or non-solicitation agreement with Alco. Prior to opening Ace, Alco had given Keith repeated and unfettered access to its computer system when it hired him to repair the system. On one occasion, Alco permitted Keith to remove the hard drive from Alco's office entirely. The hard drive and information on the computer was not password protected. When Alco upgraded its computer system around 2001, it gifted its old computers to Keith with all of the data on these computers still intact and unprotected. For each registration that Alco processes, Alco lists the customer's name and lists its own mailing address at PO Box 3113, Portland, Maine 04104. Each trailer registration (containing Alco's customer's name and Alco's address) is a public record, which the Secretary of State's office will provide copies of for a fee.

As for damages, Joseph Alger testified at the trial that he calculated the fees he would generate from the registration of the number of trailers belonging to common customers wrongfully acquired by Ace, over the period of ten years. This analysis yielded damages of Two Hundred Twenty Three Thousand Three Hundred and Eighty-Five Dollars ($223,385.00). Although most clients on the Stipulated List

8

of Common Customers had been clients of Alco for thirty years or more, Joseph felt ten years was a reasonable time frame from which to calculate damages.

The Court does not question Plaintiff's frustration. Frustration alone, however, does not fortify the elements required for Plaintiff to recover against any of the Defendants. The Court concludes that the evidence falls far short of supporting Plaintiff's burden on nearly every conceivable front.

## II.    *Discussion*

The most elemental and obvious deficit is that regarding causation and measure of damages. As such and because this failure of proof results in a finding for all Defendants, the Court addresses it first.[1]

The Plaintiff's burden is to demonstrate by a preponderance of the evidence that the misappropriation of trade secrets caused actual loss or the unjust enrichment not taken into account in computing actual loss. The Uniform Trade Secrets Act does not alter the principles applied in analyzing causation and damages.

The Law Court has routinely held that the principle of proximate cause requires at a minimum, substantiality.[2] Evidence is sufficient to support a finding of proximate cause if the evidence and inferences that may reasonably be drawn from the evidence indicate that the misappropriation played a substantial part in bringing about or actually causing the injury. A fact finder is not permitted to find proximate

[1] The only remaining claim against the "Ace Defendants" (Keith and Laura Robbins and Ace) is Misappropriation of Trade Secrets at Count IV. See, Order on Defendants' Motion for Summary Judgment, dated June 22, 2015.

[2] Proximate cause also requires an element of foreseeability in tort application. For purposes of the Court's analysis here, foreseeability is not required.

9

cause based on speculation or conjecture. *Tolliver v. DOT,* 2008 ME 83, ¶ 42, 948

A.2d 1223, 1236. "In order to be recoverable, damages must not be uncertain or

speculative but must be grounded on facts in evidence." *Williams v. Ubaldo,* 670

A.2d 913, 917 (Me. 1996). Simply put, a misappropriation of trade secrets in the air

is not sufficient to award damages. There must be competent and persuasive

evidence of reliable quality to make out a claim for damages. In this case, there

simply was no evidence whatever that any alleged misappropriation played a

substantial part in bringing about damages caused as a direct result of the

misappropriation.

The fortuity of a common list of customers fails to inform the analysis. In a

competitive and free market, there are a host of alternative reasons why these

common customers hired Ace, several of which were introduced in evidence.

Equally important is that Plaintiffs offered precisely no evidence that damages were

caused by the alleged misappropriation. None of these common customers was

called to testify at trial. Moreover, the calculation of damages was so speculative as

to belie any evidentiary value even if Plaintiff had introduced evidence supporting a

causal connection between the alleged misappropriation and damages.

In light of this conclusion, which is dispositive of all claims against all

Defendants, the Court does not reach the issue of misappropriation. The Court

separately and briefly addresses the other claims against Sherri Alger.

Ms. Alger was not present at trial. The Suggestion of Death filed by Attorney

Evans, states that Sherri Alger died on or about October 5, 2016. The Court

admitted as Plaintiff's Exh. 1, an affidavit by Sherri Alger as an admission against her

10

but not as against the Ace Defendants. Plaintiff urges that the court should admit the affidavit as an admission as against the Ace Defendants under M.R. Evid. 801(d)(2). The Court declines to admit the affidavit for that expanded purpose as it does not appear to qualify as an adopted statement or one which was made by the party's agent or employee, or made on a matter within the scope of that relationship while it existed. Even if the affidavit had been admitted as against the Ace Defendants under Rule 801 or 804, it would not have altered the deficiency on causation and damages, which alone results in a finding for Defendants. Moreover, to the extent the affidavit informed any other issue in the case, its utility is substantially undermined in light of the totality of the evidence regarding Ms. Alger's shifting and erratic allegiances between her ex-husband and brother, as contrasted with the testimony offered by Defendants, which the Court found to be credible.

As for Counts 1-3 against Sherri Alger, the Court finds in favor of Ms. Alger for the same reasons the Court granted summary judgment to the Ace Defendants on those claims. There was no evidence offered at trial to support claims against Ms. Alger for NIED, IIED, or interference with an economic advantage.

11

### III.    Conclusion

Judgment in favor of the Ace Defendants (Keith and Laura Robbins and Ace Trailer Agency) as to Count IV.

Judgment in favor of Defendant Sherri Alger as to Counts I, II, III and IV.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date:   November 1, 2016

Lance E. Walker
Justice, Superior Court

12

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  CUMSC-CV-14-102

STATE OF MAINE
Cumberland ss Clerk's Office

JUN 22 2015

RECEIVED

JOSEPH F. ALGER, SR. and
ALCO COMPANY, INC.,

            Plaintiffs

v.                                                ORDER ON DEFENDANTS'
                                                  MOTION FOR SUMMARY
ACE TRAILER AGENCY, KEITH                         JUDGMENT
ROBBINS, LAURA ROBBINS, and
SHERI ROBBINS-ALGER,

            Defendants


Defendants Ace Trailer Agency, Keith Robbins, and Laura Robbins ("Ace defendants") have moved for summary judgment on all counts of the plaintiffs' complaint. Defendant Sheri Robbins-Alger ("Sheri Robbins") has not joined in the motion. For the following reasons, the motion is granted in part and denied in part.

## Facts

The following facts are presented in a light most favorable to plaintiffs as the non-moving parties. Plaintiff Joseph Alger owns plaintiff Alco Company, Inc. ("Alco"), a Maine trailer registration business. (Def.'s Supp. S.M.F. ¶ 1.) Sheri Robbins is Joe Alger's ex-wife and former employee, and defendant Keith Robbins's brother. (Def.'s Supp. S.M.F. ¶ 2.) Sheri Robbins worked for Joe Alger for 18 years, including time both before and after the two divorced. (Pl.'s Add. S.M.F. ¶¶ 5-6.) Sheri Robbins did not acquire any interest in Alco pursuant to the couples' divorce. (Pl.'s Add. S.M.F. ¶ 10.) In August 2012, after Joe Alger and Sheri Robbins divorced, Sheri was laid off from Alco. (Pl.'s Add. S.M.F. ¶ 8.)

While working at Alco, Sheri had access to certain back-up discs that contained customer information, including special pricing information, contact information, numbers and types of registrations, and other client data. (Pl.'s Add. S.M.F. ¶¶ 1, 10.) According to Joe Alger, the back-up discs were password protected and were locked in the company's safe. (Pl.'s Add. S.M.F. ¶ 12.) Joe Alger was unaware, however, that Sheri Robbins had another copy of the back-up discs that she used when she worked from home. (Pl.'s Add. S.M.F. ¶ 10.) Joe Alger never consented to Sheri Robbins's use of the discs outside of the company. (Pl.'s Add. S.M.F. ¶ 10.)

When Sheri Robbins was laid off, she did not return her extra copy of the back-up discs. (Pl.'s Add. S.M.F. ¶ 14.) In 2013, defendants Keith and Laura Robbins started their own trailer registration business, defendant Ace Trailer Agency ("Ace"). (Def.'s Supp. S.M.F. ¶ 6.) Sheri Robbins delivered a copy of the discs to Keith and Laura Robbins for use in their new business. (Pl.'s Add. S.M.F. ¶ 15.) Sheri recognized that the information was valuable and could be considered a trade secret. (Pl.'s Add. S.M.F. ¶¶ 17-18.) She told Keith and Laura that the information could be used to "crush Alco." (Pl.'s Add. S.M.F. ¶ 18.) The Ace defendants used the information on the discs to solicit Alco's customers. (Pl.'s Add. S.M.F. ¶ 18.)

## Analysis

### 1. Standard of Review

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Dussault v. RRE Coach Lantern Holdings, LLC, 2014 ME 8, ¶ 12, 86 A.3d 52 (quoting F.R. Carroll, Inc. v. TD Bank, N.A., 2010 ME 115, ¶ 8, 8 A.3d 646). "A

2

material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." McIlroy v. Gibson's Apple Orchard, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting N. E. Ins. Co. v. Young, 2011 ME 89, ¶ 17, 26 A.3d 794). "Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success." Lewis v. Concord Gen. Mut. Ins. Co., 2014 ME 34, ¶ 10, 87 A.3d 732. If facts are undisputed but nevertheless capable of supporting conflicting, plausible inferences, "the choice between those inferences is not for the court on summary judgment." Id.

2. Interference with an Economic Advantage (Count I)

In count I, plaintiffs assert tortious interference with an advantageous relationship and allege that all defendants conspired to acquire and use Alco's confidential business information to steal Alco's customers. "To establish the tort of interference with an advantageous relationship, a plaintiff must show a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference." Ne. Coating Techs. v. Vacuum Metallurgical Co., 684 A.2d 1322, 1325 (Me. 1996). Plaintiffs have not identified any fraud on the part of defendants Laura and Keith Robbins or Ace. See Barnes v. McGough, 623 A.2d 144, 146 (Me. 1993) (circumstances constituting allegation of fraud must be stated with particularity). Plaintiffs argue that their interference claim is based on intimidation.

3

Plaintiffs fail to identify any facts that constitute intimidation. Although intimidation is not limited to "frightening a person for coercive purposes", Pombriant v. Blue Cross/Blue Shield of Me., 562 A.2d 656, 650 (Me. 1989), plaintiffs have not identified any behavior on the part of Laura and Keith Robbins or Ace that could be construed as intimidating. The Ace defendants are entitled to judgment on count I of the complaint.

3. Counts II and III

Plaintiffs do not challenge dismissal of counts II and III against the Ace defendants. (Pl.'s Response, at 1.) Accordingly, these counts are dismissed against the Ace defendants.

4. Misappropriation of a Trade Secret (Count IV)

Plaintiffs focus their attention on count IV of the complaint, which alleges misappropriation of a trade secret under 10 M.R.S. § 1544. To prevail on their claim, plaintiffs must demonstrate that the information on the discs constitutes a trade secret and that defendants misappropriated that information.

a. Whether the Discs Contained Trade Secrets

"Trade secret" is defined as "information, including but not limited to, a formula, pattern, compilation, program, device, method, technique or process that:

> **A.** Derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
> **B.** Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

10 M.R.S. § 1542(4) (2014). The court will address each element of this two-part test individually.

4

### i. Independent Economic Value

The court may consider the following factors in deciding whether information "derives independent economic value . . . from not being generally known":

> (1) the value of the information to the plaintiff and to its competitors; (2) the amount of effort or money the plaintiff expended in developing the information; (3) the extent of measures the plaintiff took to guard the secrecy of the information; (4) the ease or difficulty with which others could properly acquire or duplicate the information; and (5) the degree to which third parties have placed the information in the public domain or rendered the information 'readily ascertainable' through patent applications or unrestricted product marketing.

Spottiswoode v. Levine, 1999 ME 79, ¶ 27 n.6, 730 A.2d 166. Defendants argue that the information on the discs was publicly available. See OfficeMax, Inc. v. County Qwick Print, 751 F. Supp. 2d 221, 251 (D. Me. 2010).[1] Several of the factors, however, weigh in favor of plaintiffs.

First, both Joe Alger and Sheri Robbins believed the information on the discs was valuable. Second, according to plaintiffs, the information took them 30 years to accrue. Third, plaintiffs locked up back-up copies of the information in the company safe and password-protected the files. Fourth, although some of the information on the discs could likely have been duplicated, it would require significant effort to compile a comparable list. Finally, although much of the information was likely publicly available, certain data such as special pricing

---

1 The court notes that the OfficeMax case was a decision on a motion for a preliminary injunction and not a motion for summary judgment. OfficeMax, Inc., 751 F. Supp. 2d at 250. Although OfficeMax cast doubt on whether certain customer information that was publicly available could constitute a trade secret, id. at 250-51, the court's analysis involved weighing facts, which would not be appropriate in deciding a motion for summary judgment.

information for certain clients was not. Plaintiffs have generated a genuine issue of material fact on the independent value prong of the trade secrets test.

### ii. Reasonable Efforts to Maintain Secrecy

The court may consider the following factors in determining whether the efforts to retain the information's secrecy were reasonable under the circumstances:

> (1) the extent to which the information is known outside the plaintiff's business; (2) the extent to which employees and others involved in the plaintiff's business know the information; (3) the nature and extent of measures the plaintiff took to guard the secrecy of the information; (4) the existence or absence of an express agreement restricting disclosure; and (5) the circumstances under which the information was disclosed to any employee, to the extent that the circumstances give rise to a reasonable inference that further disclosure without the plaintiff's consent is prohibited.

Spottiswoode, 1999 ME 79, ¶ 27 n.7, 730 A.2d 166.

These factors cut both ways. In the plaintiffs favor, the information was password-protected and stored in a locked safe. Although Sheri Robbins had access to the information, Joe Alger was unaware that she retained a copy of it after she left Alco. While some of the information was publicly available, some if it would be difficult to obtain and some of it was likely confidential information. In the defendants' favor, Joe Alger did not require Sheri Robbins to sign a non-disclosure agreement. Sheri Robbins was also able to use the information while working from home, which demonstrates that Joe Alger was comfortable allowing the information out of the company. Because there are conflicting factual accounts, summary judgment is inappropriate on the issue of whether the information constitutes a trade secret.

6

b. Whether the Discs were Misappropriated

Defendants next dispute whether the information on the discs was misappropriated. "Misappropriation" is defined by statute as:

A. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
B. Disclosure or use of a trade secret of another without express or implied consent by a person who:
    1) Used improper means to acquire knowledge of the trade secret;
    2) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
        i) Derived from or through a person who had utilized improper means to acquire it;
        ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
        iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
    3) Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

10 M.R.S. § 1542(2). The term "improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy or espionage through electronic or other means." 10 M.R.S. § 1542(1).

The Ace defendants argue that Sheri Robbins represented that she was a 50% owner of Alco and that she was giving them a list of her own clients. They therefore had no idea that the information could have been misappropriated. This argument is unconvincing. Sheri Robbins was recently laid off from Alco and was upset. She brought the information to the Ace defendants and told them they could use it to "crush" Alco. A reasonable fact-finder could conclude that the Ace defendants knew that Sheri Robbins may have stolen or improperly

7

retained the discs, which contained Alco's client information. Defendants are not entitled to summary judgment on count IV of the complaint.

5. Lost Profits Claim

Finally, defendants argue that they are entitled to judgment on plaintiffs' request for lost profits because the claim is speculative and too difficult to calculate. Plaintiffs will be able to show, however, which of its customers Ace contacted and whether they subsequently gave their business to Ace. Although some of these customers may have switched companies regardless of the information on the discs, plaintiffs will at least have the opportunity to show that without the information from Sheri Robbins, the Ace defendants would not have been able to convince certain Alco customers to switch companies.

The entry is:

> Summary judgment is granted to defendants Laura Robbins, Keith Robbins, and Ace on counts I, II, and III of plaintiffs' complaint.
>
> Summary judgment is denied on count IV of plaintiffs' complaint.

Date: _June 22, 2015_    

Roland A. Cole
Chief Justice, Superior Court

Peter Evans Esq
75 Pearl Street
Portland ME 04101

_Pl-

Matthew Warner Esq
PO Box 9546
Portland ME 04112

DM